Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
Paige T. Rolfe (State Bar No. 331096)
prolfe@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone:  (424) 500-8552

[Proposed] Attorneys for Fu Bang
Group Corp, USA, Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

In re:

FU BANG GROUP CORP, USA,

               Debtor and
               Debtor in Possession.

Case No. 6:25-bk-13004-SY

Chapter 11

**DEBTOR'S OMNIBUS OPPOSITION TO (1) MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR RELIEF FROM TURNOVER FILED BY FIRST CREDIT BANK, AND (2) MOTION FOR RELIEF FROM THE AUTOMATIC STAY FILED BY SPARKNEST, LLC**

Hearing:
Date:      June 12, 2025
Time:     1:30 p.m.
Crtrm:    302
            3420 Twelfth Street
            Riverside, CA 92501

Debtor, Fu Bang Group Corp, USA ("Fu Bang" or the "Debtor"), hereby opposes the Motion for Relief from the Automatic Stay and for Relief from Turnover by Prepetition Receiver filed by First Credit Bank ("First Credit;" the "First Credit Motion") (Dkt. No. 14), and the Motion for Relief from the Automatic Stay filed by Sparknest, LLC ("Sparknest;" the "Sparknest Motion") (Dkt. No. 17; together with Dkt. No. 14, the "Motions").  The Motions seek relief from the

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

automatic stay to allow First Credit and Sparknest to pursue foreclosure remedies against Fu Bang's property located at 2798 Troy Court, Corona, CA 92883 (the "Property") on various grounds: 11 U.S.C. § 362(d)(1) (for cause – bad faith and lack of adequate protection); § 362(d)(2) (no equity and not necessary to an effective reorganization); and § 362(d)(4) (multiple bankruptcy cases affecting the same property).

Additionally, although a receiver is required to turn over a debtor's property to a debtor-in-possession pursuant to § 543(b), the First Credit Motion seeks an order from the Court to allow the "rents and profits" receiver it had appointed in April 2025 to remain in possession of the Property pursuant to § 543(d)(1) on the basis that the Debtor mismanaged the Property prior to filing bankruptcy.

The Motions should be denied for the reasons set forth below. Fu Bang should be afforded a fair opportunity to file a confirmable plan and the receiver should be required to comply with § 543(a) and (b) and return, and account for, the Debtor's property.

## I. **Background**

Fu Bang is owned by Ms. Bo Chen. Ms. Chen is one of two current board members of Fu Bang. On August 14, 2023, the Fu Bang board (then a four-member board) elected Ms. Chen as Secretary of Fu Bang. As of December 2024, Ms. Chen was also the CEO of Fu Bang, replacing Lang (Anthony) Zhang.

Fu Bang acquired its Property (APN 279-460-064) in 2013 for $7.3 million. In 2016, Fu Bang closed on a construction financing loan with First Credit Bank for $12 million. First Credit Bank holds a first priority lien on the Fu Bang Property with a current balanced calculated by First Credit Bank to be $10,873,592.52. Fu Bang also financed construction and development through EB5 investment, taking in multiple tranches of loans through Dos Lagos Regional Center and associated limited partnerships ("EB5 Center").

The Fu Bang units were intended to be sold as condominiums and to that end, Fu Bang had obtained a condo map for individual unit sales. However, before any units could be sold, 12 of the EB5 investors (the "Mingxhia Lu Plaintiffs") brought suit against Fu Bang and recorded a *lis pendens* on the Property. That lawsuit was dismissed but the *lis pendens* was not released. The

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

DEBTOR'S OPPOSITION TO RELIEF FROM STAY AND RELIEF FROM TURNOVER

Mingxhia Lu Plaintiffs brought suit again and obtained a judgment in 2024 that is currently a third priority lien against the Fu Bang Property (the "Mingxhia Lu Judgment Lien").

Construction of the first 51 units in phases 1 and 2 of development have been completed. Due to the *lis pendens*, Fu Bang was not able to sell condo units. Further complicating its business plan, the *lis pendens* frustrated Fu Bang's efforts to refinance the First Credit Bank construction loan and First Credit Bank would not release its lien for individual unit sales. Unable to sell condo units, Fu Bang began renting units to third parties and providing long-term leases for nominal monthly payments to certain of the EB5 investors in exchange for satisfaction of debt and an intent to transfer ownership when it was able to sell condominiums. As of the bankruptcy filing, 36 units are rented to third parties at various market rates, 8 units are rented to EB5 investors for nominal rates, and one unit is provided rent-free to a religious organization for use as a temple. Four units are vacant and available for rent. One unit is used by Fu Bang as an office and one unit is a community center. At this time, the condo map has expired and would need to be renewed in order for units to be sold individually.

The phase 3 development site on the Fu Bang property is intended for 43 additional condo units. Concrete slabs have been laid down for this development along with utilities stubbed to the site. The Fu Bang Property has recently been appraised at $24 million.

In addition to the First Credit Bank first lien, Mingzhe Li was granted a second priority lien on account of a $2 million loan. The Mingzhe Li interests were transferred to Sparknest, LLC. There are three recorded liens related to Lang Zhang – SZ Properties LLC and U.S. Discount Center Corp. Although Lang Zhang and/or his related companies did make loans to Fu Bang, Fu Bang did not grant Lang Zhang a security interest in the Property. As such, Fu Bang contests the recorded liens related to Lang Zhang and his companies and will bring a motion to avoid these liens. Fu Bang also acknowledges a third priority tax lien that may exceed $1 million.

Fu Bang has not made loan payments to First Credit Bank since January 2025. First Credit Bank brought suit on its loan and for a receiver. In April 2025, Mark Adams (the "Receiver") was appointed as receiver and took possession of the Fu Bang Property. The Receiver is now responsible for collecting rents and paying for the operating costs of the Fu Bang Property. First Credit Bank

DEBTOR'S OPPOSITION TO RELIEF FROM STAY AND RELIEF FROM TURNOVER

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

also recorded a Notice of Default on December 16, 2024 and a Notice of Sale on April 15, 2025 with an initial sale date of May 21, 2025. First Credit Bank also took action to recover against the Dos Lagos Center 2, LLC ("DLC2") property and recorded a Notice of Default on January 15, 2025 and a Notice of Sale on April 15, 2025 with an initial sale date of May 21, 2025. Sparknest recorded a Notice of Sale on March 11, 2025 with an initial sale date of April 15, 2025.

Without the guidance of bankruptcy counsel, a chapter 13 case was filed for Mr. Richard Don in a good faith – although misguided – effort to forestall the Fu Bang foreclosure and to restructure the Fu Bang debt. That proceeding was filed on April 15, 2025 and was pending before Judge Neil Bason in the Los Angeles Division, Case No. 2:25-bk-13063-NB (the "Don Bankruptcy"). Sparknest sought relief from the automatic stay in the Don Bankruptcy, which was granted at a hearing where counsel to Fu Bang (recently engaged) appeared to explain to the Court that a chapter 11 would be imminently filed for Fu Bang to appropriately engage in a restructuring. Relief from stay was granted in the Don Bankruptcy and it is expected that the Don Bankruptcy will be dismissed pursuant to an OSC entered by the Court. Sparknest's request for the relief from stay order to be effective for 180 days in any case commenced by a debtor who claims an interest in the Property was rejected by the Court. The Court reasoned that there was insufficient evidence to conclude that the Don Bankruptcy was filed in bad faith and Fu Bang's retention of counsel to file a Fu Bang bankruptcy further indicated the Don Bankruptcy filing was merely a mistake without ill intent.

## II.    There is no cause to grant relief from the automatic stay pursuant to § 362(d)(1)

### A.    The Fu Bang bankruptcy was not filed in bad faith.

The Motions assert that Fu Bang's bankruptcy petition was filed in bad faith, because it was filed with only a few case commencement documents, and because a previous case, filed by Richard Don, affected the same Property.  However, these two facts alone are not indicative of bad faith that would allow relief from the automatic stay.  The Fu Bang bankruptcy case was filed to prevent a foreclosure – but that alone is not bad faith.  "Skeleton" or "emergency" petitions, with schedules to follow, are explicitly permitted by the Bankruptcy Code.

/ / /

DEBTOR'S OPPOSITION TO RELIEF FROM STAY AND RELIEF FROM TURNOVER

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Here, Fu Bang retained counsel days before the relief from stay hearing in the Don Bankruptcy that would have cleared the way for the Sparknest foreclosure. Counsel had insufficient time to prepare anything more than an "emergency" filing for Fu Bang, but have since filed Schedules, Statement of Financial Affairs, and are fully engaged in this bankruptcy.

First Credit Bank points to the Don Bankruptcy as evidence of bad faith, but as discussed above, Judge Bason, who is overseeing the Don Bankruptcy, determined there was insufficient evidence to conclude bad faith and the fact that Fu Bang engaged counsel to file this corporate case indicates that the Don Bankruptcy was a mistake without ill intent. First Credit Bank argues that Debtor's failure to pay its debts demonstrates mismanagement. If this were the standard, then every debtor to ever file bankruptcy would be guilty of mismanagement. The fact that Fu Bang could not pay its debts is precisely why it filed for bankruptcy and the reason it should be afforded time to file a plan…not a reason to deny Fu Bang the relief afforded by chapter 11.

### A.     The Movant's interest in the Property is adequately protected.

The Motions assert that the movants' interest in the Property is not adequately protected because there is no equity cushion.  But the Motions' calculation of debts on the Property are incorrect, because they rely on three invalid liens listed in the Trustee's Sale Guarantee, which should be avoided by this Court. Compounding that error, each Motion underestimates the value of the Property.

Fu Bang is filing a forthcoming motion to avoid three invalid liens which were recorded by SZ Properties LLC and U.S. Discount Center Corp. These entities are owned and controlled by former officer Lang Zhang. While those two companies did extend unsecured loans to Fu Bang, the purported deeds of trust are not supported by any valid security interest, and were recorded without Fu Bang's agreement or consent.

Those purported liens which Fu Bang is moving to avoid are: (1) the deed of trust dated May 1, 2024 and recorded May 3, 2024, for the benefit of U.S. Discount Center Corp. in the amount of $460,000; (2) the deed of trust dated October 28, 2024 and recorded November 1, 2024, for the benefit of SZ Properties LLC in the amount of $8,730,000, and (3) the deed of trust dated October 28, 2024 and recorded November 1, 2024, for the benefit of SZ Properties LLC in the

DEBTOR'S OPPOSITION TO RELIEF FROM STAY AND RELIEF FROM TURNOVER

amount of $450,000. Thus, the equity calculations contained in the Motions overstate the debt on the Property by $9,640,000.

Once those improper purported liens are avoided, debts secured by the Property are as follows:

| Position | Name of holder | Amount<br>*Source of number* |
|---|---|---|
| 1st Deed of Trust | First Credit Bank | $10,873,592.52<br>*Dkt. No. 14, First Credit motion* |
| 2nd Deed of Trust | Sparknest, LLC | $2,619,262.10<br>*Dkt. No. 17, Sparknest motion* |
| Judgment lien | Minxia Lu | $5,832,655.00<br>*Dkt. No. 14, Ex. 6, Trustee's Sale Guarantee* |
| Property taxes | Riverside County | $1,107,586.88<br>*Dkt. No. 14, Ex. 6, Trustee's Sale Guarantee* |
| **Total debt** | | **$20,433.096.50** |

After avoiding the invalid liens, the total debt on the Property is $20,433.096.50.

The First Credit Motion estimates the fair market value of the Property, including adjacent land, as $21,500,000 - $23,000,000 (Dkt. No. 14, Exh. 10). The Sparknest Motion estimates the fair market value of the Property as $12,500,000-$13,500,000 (Dkt. No. 17, Exh. 2). The attached declaration of Christopher Maling estimates the current value of the Property at $24,000,000. Based on a fair market value of $24,000,000, and debts on the Property totaling $20,433,097, there is approximately $3,566,903 of equity in the Property, which equates to a 17.5% equity cushion. This equity cushion well exceeds the 10% equity cushion benchmark frequently used to assess the adequacy of equity to protect a secured creditor's interest. *See In re Mellor,* 734 F.2d 1396,1400-01 (9th Cir. 1984) (recognizing an equity cushion of 10% or more as sufficient). As such, there is no question that the Movants' security interest in the Property is adequately protected.

**III.   Relief from the automatic stay pursuant to § 362(d)(2) is not warranted because Fu Bang has equity in the Property and it is necessary for an effective reorganization.**

As set forth above, Fu Bang has over $3.5 million of equity in the Property. This alone defeats relief under Section 362(d)(2). Nevertheless, the Property is also necessary for an effective

**WEINTRAUB ZOLKIN TALERICO & SELTH LLP**
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-6-
DEBTOR'S OPPOSITION TO RELIEF FROM STAY AND RELIEF FROM TURNOVER

reorganization. Woven throughout the Motions is the concern that Fu Bang will not be able to propose a successful plan of reorganization.  In the case of single asset real estate, § 362(d)(3) requires that within 90 days from the petition date (May 7, 2025), the debtor has either filed a plan that has a reasonable possibility of being confirmed within a reasonable time or has begun making interest payments at the nondefault contract rate. These Motions, each brought approximately two weeks after Fu Bang's bankruptcy case was filed, are at best premature. The Movants' opinions of the Debtor's chances of reorganization, two weeks into the case and before the Debtor has had a chance to disclose its full financial picture or file a proposed plan, is mere speculation and should not be allowed to undercut the Debtor's opportunity to make a good faith effort at reorganization.

**IV.    § 543(d)(1) - There are no grounds to relieve the Receiver of the turnover requirement, and turnover is essential to the success of Fu Bang's bankruptcy case.**

Section 543 establishes specific default rules generally favoring the turnover of assets to the trustee or debtor in possession in order to centralize the administration of the bankruptcy estate and to further reorganization policy. *See e.g. In re Orchards Village Invs.*, LLC, 61 C.B.C.2d 1585, 405 B.R. 341, 352 (Bankr. D. Or. 2009) ("Reorganization policy generally favors turnover of business assets to the debtor in a chapter 11 case."). First Credit Bank, as the party requesting excusal from turnover, bears the burden of establishing that compliance should be excused. *See In re Picacho Hills Util. Co.*, 2013 Bankr. LEXIS 1733 (Bankr. D.N.M. Apr. 26, 2013) ("The party requesting excusal from turnover must show by a preponderance of evidence that the best interests of the creditors are served by permitting a custodian to retain control of the estate."); *In re Sabana del Palmar, Inc.*, 2013 Bankr. LEXIS 2258 (Bankr. D.P.R. May 29, 2013) (stating that "a party opposing the turnover of property held by a receiver must demonstrate affirmatively how creditors will be better served if the receiver is retained").

First Credit Bank discusses three factors typically examined when creditors seek to maintain a pre-petition receiver over a debtor's assets: (1) mismanagement of the property; (2) insufficient income to successfully reorganize; and (3) the debtor has not and is not likely to use the property to benefit creditors.

/ / /

As to mismanagement, First Credit Bank's argument is essentially that the Debtor hasn't been able to pay its debts. As discussed above, financial distress is not wrongdoing, and the inability to pay back its debts on their current terms is the reason that Fu Bang filed this bankruptcy case. Is the current rental income sufficient to successfully reorganize? That depends. On it's own, current rental income cannot support completion of the phase 3 construction, but if the Debtor pursues a reorganization to complete construction of phase 3, that plan will necessarily entail new funds – likely in the form of equity – in addition to the rental income in order to reorganize. Alternatively, the Debtor can pursue an orderly marketing and sale process of the Property, which will require administration and funding to accomplish. Either of these legitimate uses of chapter 11 require the use of the Debtor's income to succeed. And either of these exit strategies would be employed to maximize value…for the benefit of creditors.

The Receiver, Mark Adams, is a health and safety receiver, notorious for a "checkered history." His background seems ill-suited for the management of the Property. The Property requires only routine rent collection and leasing activities, and basic maintenance – not the specialized skill of a health and safety receiver. A review of the Receiver's website demonstrates that as a "health and safety" receiver he is a specialist in extreme cases of taking over properties that pose a threat to public safety that are "run down" "nuisance properties." The Property is neither.

Indeed, it seems the Receiver's heavy hand is already at work in this case. At the current time when Section 543(a) forbids the Receiver from, "tak[ing] any action in the administration of[] property of the debtor," the Receiver has given notice that he is commencing eviction proceedings and will seek to obtain one or more judgments and writs of execution – all without seeking approval from this Court. Such cavalier attitude is not in the best interests of creditors.

The Debtor is prepared to execute on a plan to maximize value for all creditors with all due haste. To do this, the Debtor requires turnover of its Property which is the default position and required result unless First Credit Bank can overcome its burden to demonstrate why the Receiver should remain in place. That burden has not been met. The Receiver is not in place to maximize value for creditors. His continued possession of the Property chokes off what would be a meaningful

/ / /

DEBTOR'S OPPOSITION TO RELIEF FROM STAY AND RELIEF FROM TURNOVER

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

return for unsecured creditors in favor of a foreclosure where secured creditors are the only parties to likely see a dollar.

## V.    Conclusion

If the Movants are allowed to foreclose, there will be nothing left to reorganize or administer in this case. The Debtor is on a short leash with the single asset real estate 90-day timeline to file a plan or begin interest payments. The Debtor fully intends to file a plan within the 90-day period that will administer the Property in a manner to provide full recovery for secured creditors and maximize return for unsecured creditors. The Receiver should not be excused from his statutory requirement to turn over the Property to the Debtor. Turnover is in the best interests of all creditors and does not prejudice the rights of First Credit Bank. For all of the reasons set forth herein, Fu Bang respectfully requests that the Court deny the First Credit Motion and the Sparknest Motion, preserving the automatic stay and ordering turnover by the Receiver.

Dated:  May 29, 2025                  **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**


By: */s/ Derrick Talerico*
    Derrick Talerico
    Paige T. Rolfe
[Proposed] Counsel to Debtor Fu Bang Group Corp. USA

DEBTOR'S OPPOSITION TO RELIEF FROM STAY AND RELIEF FROM TURNOVER