Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
Paige T. Rolfe (State Bar No. 331096)
prolfe@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone:  (424) 500-8552

[Proposed] Attorneys for Fu Bang
Group Corp, USA, Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

| In re: | Case No. 6:25-bk-13004-SY |
|---|---|
| FU BANG GROUP CORP, USA, | Chapter 11 |
| Debtor and Debtor in Possession. | **DEBTOR'S OPPOSITION TO MOTION TO DISMISS FILED BY SPARKNEST, LLC**<br><br>Hearing:<br>Date:    June 12, 2025<br>Time:    1:30 p.m.<br>Crtrm:   302<br>3420 Twelfth Street<br>Riverside, CA 92501 |

Debtor, Fu Bang Group Corp, USA ("Fu Bang" or the "Debtor"), hereby opposes the Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b) filed by Sparknest, LLC ("Sparknest") (Dkt. No. 18, the "Motion").  The Motion requests that the above-titled bankruptcy case (the "Bankruptcy Case") be dismissed, on various grounds which it alleges constitute cause under 11 U.S.C. § 1112(b).  The Motion fails to prove each of these grounds, as briefed below.

I.    **Background**

Fu Bang is owned by Ms. Bo Chen. Ms. Chen is one of two current board members of Fu Bang. On August 14, 2023, the Fu Bang board (then a four-member board) elected Ms. Chen as Secretary of Fu Bang. As of December 2024, Ms. Chen was also the CEO of Fu Bang, replacing Lang (Anthony) Zhang.

Fu Bang acquired its property (APN 279-460-064) in 2013 for $7.3 million (the "Property"). In 2016, Fu Bang closed on a construction financing loan with First Credit Bank for $12 million. First Credit Bank holds a first priority lien on the Fu Bang Property with a current balanced calculated by First Credit Bank to be $10,873,592.52. Fu Bang also financed construction and development through EB5 investment, taking in multiple tranches of loans through Dos Lagos Regional Center and associated limited partnerships ("EB5 Center").

The Fu Bang units were intended to be sold as condominiums and to that end, Fu Bang had obtained a condo map for individual unit sales. However, before any units could be sold, 12 of the EB5 investors (the "Mingxhia Lu Plaintiffs") brought suit against Fu Bang and recorded a *lis pendens* on the Property. That lawsuit was dismissed but the *lis pendens* was not released. The Mingxhia Lu Plaintiffs brought suit again and obtained a judgment in 2024 that is currently a third priority lien against the Fu Bang Property (the ("Mingxhia Lu Judgment Lien").

Construction of the first 51 units in phases 1 and 2 of development have been completed. Due to the *lis pendens*, Fu Bang was not able to sell condo units. Further complicating its business plan, the *lis pendens* frustrated Fu Bang's efforts to refinance the First Credit Bank construction loan and First Credit Bank would not release its lien for individual unit sales. Unable to sell condo units, Fu Bang began renting units to third parties and providing long-term leases for nominal monthly payments to certain of the EB5 investors in exchange for satisfaction of debt and an intent to transfer ownership when it was able to sell condominiums. As of the bankruptcy filing, 36 units are rented to third parties at various market rates, 8 units are rented to EB5 investors for nominal rates, and one unit is provided rent-free to a religious organization for use as a temple. Four units are vacant and available for rent. One unit is used by Fu Bang as an office and one unit is a

community center. At this time, the condo map has expired and would need to be renewed in order for units to be sold individually.

The phase 3 development site on the Fu Bang Property is intended for 43 additional condo units. Concrete slabs have been laid down for this development along with utilities stubbed to the site. The Fu Bang Property has recently been appraised at $24 million.

In addition to the First Credit Bank first lien, Mingzhe Li was granted a second priority lien on account of a $2 million loan. The Mingzhe Li interests were transferred to Sparknest, LLC. There are three recorded liens related to Lang Zhang – SZ Properties LLC and U.S. Discount Center Corp. Although Lang Zhang and/or his related companies did make loans to Fu Bang, Fu Bang did not grant Lang Zhan a security interest in the Property. As such, Fu Bang contests the recorded liens related to Lang Zhang and his companies and will bring a motion to avoid these liens. Fu Bang also acknowledges a third priority tax lien that may exceed $1 million.

Fu Bang has not made loan payments to First Credit Bank since January 2025. First Credit Bank brought suit on its loan and for a receiver. In April 2025, Mark Adams (the "Receiver") was appointed as receiver and took possession of the Fu Bang Property. The Receiver is now responsible for collecting rents and paying for the operating costs of the Fu Bang Property. First Credit Bank also recorded a Notice of Default on December 16, 2024 and a Notice of Sale on April 15, 2025 with an initial sale date of May 21, 2025. First Credit Bank also took action to recover against the DLC2 property and recorded a Notice of Default on January 15, 2025 and a Notice of Sale on April 15, 2025 with an initial sale date of May 21, 2025. Sparknest recorded a Notice of Sale on March 11, 2025 with an initial sale date of April 15, 2025.

Without the guidance of bankruptcy counsel, a chapter 13 case was filed for Mr. Richard Don in a good faith – although misguided – effort to forestall the Fu Bang foreclosure and to restructure the Fu Bang debt. That proceeding was filed on April 15, 2025 and was pending before Judge Neil Bason in the Los Angeles Division, Case No. 2:25-bk-13063-NB (the "Don Bankruptcy"). Sparknest sought relief from the automatic stay in the Don Bankruptcy, which was granted at a hearing where counsel to Fu Bang (recently engaged) appeared to explain to the Court that a chapter 11 would be imminently filed for Fu Bang to appropriately engage in a restructuring.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-3-

Relief from stay was granted in the Don Bankruptcy and it is expected that the Don Bankruptcy will be dismissed pursuant to an OSC entered by the Court. Sparknest's request for the relief from stay order to be effective for 180 days in any case commenced by a debtor who claims an interest in the Property was rejected by the Court. The Court reasoned that there was insufficient evidence to conclude that the Don Bankruptcy was filed in bad faith and Fu Bang's retention of counsel to file a Fu Bang bankruptcy further indicated the Don Bankruptcy filing was merely a mistake without ill intent.

**II.    There is No Cause to Dismiss the Bankruptcy Case Pursuant to § 1112(b)(4)(A), as the Estate is Not Being Diminished and there is a Likelihood of Rehabilitation**

Sparknest asserts that, pursuant to 11 U.S.C. § 1112(b)(4)(A), the Bankruptcy Case should be dismissed because there has been a "substantial or continuing loss to or diminution of the estate," and there is an absence of a reasonable likelihood of rehabilitation.  As the movant, Sparknest bears the burden of proving that both elements are met.  *See In re Gabriel Techs. Corp.,* 213 Bankr. LEXIS 2162 at *8 (Bankr. N.D. Cal., May 27, 2013) ("[t]he burden is on the moving party…to establish cause…. Thus, until the movant carries this burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative.").  Neither element is met here.

*a.    There has Been No Substantial or Continuing Loss to or Diminution of the Estate*

First, Sparknest fails to prove that there is a substantial or continuing loss to or diminution of the estate.  The Motion points out Fu Bang's alleged various pre-petition failings over the past twelve months.  But § 1112(b)(4)(A) is explicit that the loss it contemplates is loss to the *estate*— the bankruptcy estate, which was only created when Fu Bang filed this Bankruptcy Case on May 7, 2025.  *See, e.g., Hassen Imps. P'Ship v. City of W. Covina (In re Hassen Imps. P'ship)*, 2013 Bankr. LEXIS 3870 at *39 (9th Cir. BAP, Aug. 19, 2013), *citing In re Schriock Constr., Inc.*, 167 B.R. 569, 575 (Bankr. D.N.D. 1994) ("This element can be satisfied by demonstrating that the debtor incurred continuing losses or maintained a negative cash flow position *after the entry of the order for relief*." emphasis added). In *In re Gabriel Techs. Corp.* Judge Montali found that it is the

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

DEBTOR'S OPPOSITION TO SPARKNEST MOTION TO DISMISS

"the dissipation of assets that diminishes the estate" that is the type of "continuing loss" of which § 1112(b)(4)(A) is concerned. *In re Gabriel Techs. Corp.* at *7-8.

*Gabriel* also examined what constitutes "continuing" for 1112(b)(4)(A) purposes, finding that because the case was only three months old and a plan would soon be tested for confirmation, "…even if there is any continuing loss at all, it will not be continuing very long. *Id*. This case is even younger than Gabriel (three weeks versus three months), but is similar in that a plan will soon be filed (due to the single asset real estate timeline), so even if there was a loss – which there is not – it would not be "continuing" at this early stage of the case nor would it be "continuing" at the time a plan would be expected to be filed.

Fu Bang's bankruptcy estate had existed for only 15 days at the time Sparknest filed its Motion, and the Motion does not cite to any loss to or diminution of the estate during those 15 days. The Motion generally notes that incoming rental income is insufficient to pay secured debts. But many debtors have cash flow issues, and this hypothetical analysis is insufficient to meet § 1112(b)(4)(A)'s burden of proving that there is substantial or continuing loss to or diminution of the estate. In fact, even if the estate were experiencing losses, "the court must consider how long a situation must persist to be said to be continuing for purposes of § 1112(b)(4)(A)." *In re Gabriel Techs. Corp.*, 2013 Bankr. LEXIS 2162 at *8. Less than a month into this Bankruptcy Case, Sparknest has not met its burden of proving that the Bankruptcy Case should be dismissed pursuant to the first element of § 1112(b)(4)(A).

### b. *There is a Likelihood of Fu Bang's Successful Rehabilitation*

The second element is also not satisfied. Sparknest asserts that there is no reasonable likelihood of Fu Bang's rehabilitation through this Chapter 11 case. But again, as the Motion was filed only 15 days post-petition and Fu Bang has not yet had the opportunity to propose a plan of reorganization, to guess at the likelihood of rehabilitation is premature. "A court should not precipitously sound the death knell for a debtor by prematurely determining that the debtor's prospects for economic revival are poor." *In re Shockley Forest Indus., Inc.*, 5 B.R. 160, 162 (Bankr. N.D. Ga. 1980). And in nearly the same breath, the Motion itself acknowledges the possibility of Fu Bang acquiring sufficient financing or selling the Property.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Sparknest's position that Fu Bang will not be able to successfully reorganize is based on an incorrect calculation of the equity in the Property.  As more fully briefed in Fu Bang's Opposition to Sparknest's Motion for Relief from Stay, being filed concurrently with this Opposition, the equity calculation contained in the Motion includes three invalid liens recorded by SZ Properties LLC ("SZ Properties") and U.S. Discount Center Corp. ("Discount Center").  Fu Bang will bring a motion to avoid those liens, which are invalid because the purported deeds of trust were not authorized by Fu Bang's board. Fu Bang did not grant a security interest to SZ Properties or Discount Center and therefore the recorded deeds of trust cannot perfect any interest in collateral. The loans extended to Fu Bang by those companies were unsecured.  After deducting those three purported liens, which total $9,640,000, the total debts on the Property are actually only $20,433.096.50:

| Position | Name of holder | Amount<br>*Source of number* |
|---|---|---|
| 1st Deed of Trust | First Credit Bank | $10,873,592.52<br>*Dkt. No. 14, First Credit motion* |
| 2nd Deed of Trust | Sparknest, LLC | $2,619,262.10<br>*Dkt. No. 17, Sparknest motion* |
| Judgment lien | Minxia Lu | $5,832,655.00<br>*Dkt. No. 14, Ex. 6, Trustee's Sale Guarantee* |
| Property taxes | Riverside County | $1,107,586.88<br>*Dkt. No. 14, Ex. 6, Trustee's Sale Guarantee* |
| **Total debt** | | **$20,433.096.50** |

Further, Sparknest severely undervalues the Property, estimating its fair market value at $12,500,000-$13,500,000.  Fu Bang's expert, Christopher Maling, has estimated the fair market value of the Property as $24,000,000 (Declaration of Christopher Maling), and even First Credit Bank, another secured creditor, asserts in its Motion for Relief from Stay that the Property is worth over $21,500,000 to $23,000,000 (Dkt. No. 14, Exh. 10).  Based on a fair market value of $24,000,000, and debts on the Property totaling $20,433,097, there is approximately $3,566,903 of equity in the Property, which equates to a 17.5% equity cushion.

DEBTOR'S OPPOSITION TO SPARKNEST MOTION TO DISMISS

Sparknest fails to meet its burden of proving both elements of § 1112(b)(4)(A).

**III.** **There is No Cause to Dismiss the Bankruptcy Case Pursuant to § 1112(b); Fu Bang Filed this Bankruptcy Case in a Good Faith Attempt at Reorganizing its Debts**

The Motion asserts that Fu Bang's bankruptcy petition was filed in bad faith, and therefore should be dismissed pursuant to § 1112(b), because it was filed ahead of a foreclosure and because a previous case, filed by Richard Don, affected the same Property. However, these two facts do not meet Sparknest's burden of proving bad faith.

Sparknest is correct that the Fu Bang Bankruptcy Case was filed to prevent a foreclosure – but that alone is not bad faith. See, e.g., *In re DCNC N.C. I, LLC*, 407 B.R. 651, 2009 Bankr. LEXIS 1899 (Bankr. E.D. Pa. 2009), aff'd, 2009 U.S. Dist. LEXIS 107632 (E.D. Pa. Nov. 13, 2009) (failing to find bad faith where case was filed on the eve of foreclosure, because of the potential value of assets if developed, the existence of creditors other than the movant, and other factors). Emergency petitions, with schedules to follow, are explicitly permitted by Fed. R. Bankr. P. 1007(a)-(c). The Richard Don bankruptcy is not evidence of bad faith. As discussed above, Judge Bason, who is overseeing the Don bankruptcy, determined there was insufficient evidence to conclude bad faith and the fact that Fu Bang engaged counsel to file this corporate case indicates that the Don bankruptcy was a mistake without ill intent..

In the case of single asset real estate, § 362(d)(3) requires that within 90 days from the petition date (May 7, 2025), the debtor has either filed a plan that has a reasonable possibility of being confirmed within a reasonable time or has begun making interest payments at the nondefault contract rate. Fu Bang intends to propose a confirmable plan of reorganization which will be to the benefit of all of its creditors. The Motion, brought approximately two weeks after Fu Bang's bankruptcy case was filed, is at best premature.

**IV.** **Conclusion**

If this case is dismissed, unsecured creditors will certainly suffer the most. The senior lienholders will foreclose and unsecured creditors will likely not see a dollar. The Debtor is on a short leash with the single asset real estate 90-day timeline to file a plan or begin interest payments.

DEBTOR'S OPPOSITION TO SPARKNEST MOTION TO DISMISS

The Debtor fully intends to file a plan within the 90-day period that will administer the Property in a manner to provide full recovery for secured creditors and maximize return for unsecured creditors.

Fu Bang filed this Bankruptcy Case because it believes that it can confirm a plan of reorganization that will allow it to sell the Property in a market transaction to maximize value for creditors or restructure its debts to the benefit of both Fu Bang and its creditors. It should be permitted the time afforded by the Bankruptcy Code to do so. For all of the reasons above, Fu Bang respectfully requests that the Court deny Sparknest's Motion to Dismiss this Bankruptcy Case.

Dated: May 29, 2025                      **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**


By: */s/ Derrick Talerico*
       Derrick Talerico
       Paige T. Rolfe
[Proposed] Counsel to Debtor Fu Bang Group Corp. USA

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

DEBTOR'S OPPOSITION TO SPARKNEST MOTION TO DISMISS