Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
Paige T. Rolfe (State Bar No. 331096)
prolfe@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone:  (424) 500-8552

Attorneys for Fu Bang Group Corp, USA, and
Dos Lagos Center 2, LLC,
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>FU BANG GROUP CORP (USA),<br><br>   Debtor. | Lead Case No. 6:25-bk-13004-SY<br><br>Chapter 11 |
| In re:<br><br>DOS LAGOS CENTER 2, LLC,<br><br>   Debtor. | Jointly Administered with:<br>Case No. 6:25-bk-13642-SY |
| ☐ Affects All Debtors.<br>☒ Affects Fu Bang Group Corp (USA)<br>  Case No. 6:25-bk-13004-SY.<br>☐ Affects Dos Lagos Center 2, LLC<br>  Case No. 6:25-bk-13642-SY.<br><br>   Debtors. | **MOTION FOR ENTRY OF ORDER APPROVING SECOND STIPULATION AUTHORIZING USE OF CASH COLLATERAL**<br><br>Hearing:<br>Date:   June 4, 2026<br>Time:   1:30 p.m.<br>Crtrm:   302<br>      3420 Twelfth Street<br>      Riverside, CA 92501 |

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-1-
MOTION TO APPROVE SECOND STIPULATION FOR USE OF CASH COLLATERAL

Fu Bang Group Corp, USA (the "**Debtor**" or "**Fu Bang**"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Bankruptcy Case**"), hereby moves this Court for an order approving the Second Stipulation for entry of Order Authorizing Use of Cash Collateral (the "**Stipulation**") among Debtor and senior lien holders First Credit Bank ("**FCB**") and Sparknest, LLC ("**Sparknest**," with FCB, the "**Secured Lenders**,"), authorizing the use of cash collateral (as that term is defined by Section 363 of the Bankruptcy Code, "**Cash Collateral**") on a final basis, consistent with the terms of the Stipulation and the budgets attached to the Stipulation.

The Motion is brought pursuant to section 363(c)(2)(B) and (c)(3) and 542 of Title 11 of the United States Code (beginning at 11 U.S.C. §§ 101, et seq., the "**Bankruptcy Code**"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**", and each individually, a "**Bankruptcy Rule**"), and Rule 4001-2 of the Local Bankruptcy Rules of the Central District of California (the "**Local Rules**", and each individually, a "**Local Rule**"). Pursuant to Local Bankruptcy Rule 4001-2, the Debtor has concurrently filed a Statement Regarding Cash Collateral, Form F4001-2.STMT.FINANCE (the "**Form Statement**").

The Debtor requires the continued use of cash collateral of its Secured Lenders in order to prevent disruption to the Debtor's operations and fund (in part), the administration of the Bankruptcy Case, the Debtor requests that the Court grant this Motion. This Motion is based on the following Memorandum of Points and Authorities, the attached Stipulation, the concurrently filed Form Statement, and the attached declaration of Nicholas Rubin, the Debtor's Chief Restructuring Officer (the "**Rubin Declaration**"). The Debtor respectfully requests that the Court enter an order granting the Motion and approving the Stipulation.

Dated:  May 14, 2026              **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**


By: _/s/ Derrick Talerico_
      Derrick Talerico
      Attorneys for Fu Bang Group Corp, USA, and
      Dos Lagos Center 2, LLC,
      Debtors and Debtors in Possession

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-2-

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Debtor brings this motion continue authority for use of Cash Collateral. The Debtor requires use of Cash Collateral to fund its operations Any disruption to its business will cause severe harm to the estate and creditor body.

## II.   JURISDICTION

This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.  STATEMENT OF FACTS

### A.    The Bankruptcy Case

On May 7, 2025 (the "**Petition Date**"), Fu Bang filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Fu Bang owns real property in Corona, California (APN 279-460-064, the "**Fu Bang Property**").  Dos Lagos Center 2, LLC ("**DLC2**," together with Fu Bang, the "**Debtors**"), an affiliated company with common but not identical ownership to Fu Bang, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 30, 2025. DLC2 owns an undeveloped parcel of real property adjacent to the Fu Bang Property (APN 279-460-063, the "**Dos Lagos Property**," and collectively with the Fu Bang Property, the "**Property**").

Nicholas Rubin and Force Ten Partners were retained as Chief Restructuring Officer of the Debtors effective as of their respective petition dates by orders of the Court entered on August 5, 2025 [Dkt. 86].

### B.    The Debtors' Business

The Fu Bang Property was planned for 94 mixed-use housing units and a common area swimming pool. Construction of the first 51 units in phases 1 and 2 of the development and the swimming pool was completed in 2016. The 43 units intended for phase 3 development had not begun as of the Fu Bang bankruptcy filing. As of the Petition Date, 36 units were rented to third parties at various market rates, 8 units are rented to EB5 investors for nominal rates, and one unit is provided rent-free to a religious organization for use as a temple. One unit is used by Fu Bang as

**WEINTRAUB ZOLKIN TALERICO & SELTH LLP**
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-3-
MOTION TO APPROVE SECOND STIPULATION FOR USE OF CASH COLLATERAL

an office and one unit is a community center. The Dos Lagos Property was intended to be developed as part of a larger development with the Fu Bang Property, but the Dos Lagos Property remains undeveloped.

Fu Bang acquired the Fu Bang Property in 2013 for $7.3 million. In 2016, Fu Bang closed on a loan with FCB for $12 million that consolidated earlier loans from FCB (a 2013 loan for $4,175,000) and one or more other lenders. FCB holds a first priority lien on the Fu Bang Property with a current balanced calculated by FCB to be $10,873,592.52. Fu Bang also financed construction and development through EB5 investment, taking in multiple tranches of loans through non-debtor Dos Lagos Regional Center and associated limited partnerships.

Fu Bang had not made loan payments to FCB beginning in January 2025. FCB brought suit on its loan and for appointment of a receiver. In April 2025, a receiver (the "**Receiver**") was appointed and took possession of the Fu Bang Property. Fu Bang regained possession of the Fu Bang Property from the Receiver by the end of June 2025. The CRO began managing the Debtors in July 2025.

### C.    The Debtors' Post-Petition Operations and Restructure

Upon assuming his role as CRO, Mr. Rubin familiarized himself with the Debtors' Property, operations, and history. In consultation with Bo Don (Fu Bang's CEO and Authorized Representative of DLC2), Debtors' bankruptcy counsel, and Force Ten, Mr. Rubin analyzed the best means of returning value to the Debtors' creditors including immediate sale, short term management, and long-term hold. Mr. Rubin concluded that the optimal means of managing the Debtors' estates for the benefit of all interest holders – creditors and equity alike – is to obtain a targeted amount of funding (DIP or exit financing) to take out certain allowed secured claims, stabilize and optimize leasing operations, ensure compliance with all state and local real property regulations, and prepare the Debtors' Property for a market sale in twelve to eighteen months.[1]

---

[1] A property sale may involve dividing parcels and may ultimately include all or a portion of the Debtors' Property as determined to be in the best interests of all creditors and interest holders.

MOTION TO APPROVE SECOND STIPULATION FOR USE OF CASH COLLATERAL

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

To obtain financing and position the Property for sale, the Fu Bang Property required engagement of specialized professional property management to run the leasing and daily operations at the Fu Bang Property. A stabilized and optimized operation is necessary to demonstrate the viability of the asset for the financing needed to restructure the Debtors. To that end, the Debtors retained Sares Regis, who have been successful in managing the Fu Bang leasing operation.

Mr. Rubin is now focused on obtaining financing to fund an exit from bankruptcy that will maximize return to creditors. The continued use of Cash Collateral provided by the Stipulation will give the Debtors' the operational runway needed to make the Debtors' cases a success.

## IV.    LEGAL AUTHORITY

### A.    The Debtor Should be Authorized to Use Cash Collateral Pursuant to 11 U.S.C. § 363 to Operate, Maintain, and Preserve Assets of the Estate

The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code.  Section 363(c)(1) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section … 1108… of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363.  *See* 11 U.S.C. § 1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and any entity other than the estate have an interest…" 11 U.S.C. § 363(a).  Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(1) if "each entity that has interest in such cash collateral consents; or . . . the court, after notice and a hearing, authorizes such use, sale or lease." *See* 11 U.S.C. § 363(c)(2)(A) and (B).

MOTION TO APPROVE SECOND STIPULATION FOR USE OF CASH COLLATERAL

Where a debtor is operating a business, it is extremely important that access to cash collateral be allowed to facilitate the goal of reorganization, as "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business". *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993), quoting *In re Stein*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982). It is in the best interest of the estate and its creditors to continue to maintain the Debtor's business operations, as liquidation would generate little to no recovery for general unsecured creditors and funding for the reorganization is entirely dependent upon ongoing business operations.

To obtain court authorization to use cash collateral, a debtor must establish that the "interest" of creditors holding liens on the subject collateral will remain "adequately protected." 11 U.S.C. § 363(e). Pursuant to *United States v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S. Ct 626 (1988), the "interest in property" entitled to adequate protection under 11 U.S.C. §363(e) is no more or less than the "value of the collateral" that is subject to the secured creditor's lien. under the *Timbers*' holding, a debtor is merely required to show that the secured creditor's collateral will not decline in value prospectively to establish "adequate protection." *Timbers*, 484 U.S. 365; *In Re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990) (so long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest, the creditor is adequately protected); *In re Johnson*, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (since value of the collateral has not declined, the bank is not impaired and is not entitled to receive adequate protection payments); *In re Century Inv. Fund VII, Ltd. Partnership*, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) (where value appears to be stable, creditor is not entitled to adequate protection payments); *In re Kessler*, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (under *Timbers*, the sellers are not entitled to adequate protection payments, as there was no showing the 80-acre tract was depreciating in value); *In re Anderson*, 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) (secured creditor required to show a necessity for adequate protection by showing a decline in asset value from the petition date); *In re Mccombs Properties VI, Ltd.,* 88 B.R. 261 (Bankr. C.D. Cal. 1988); *In re Elmore*, 94 B.R. 670 (Bankr. C.D.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

MOTION TO APPROVE SECOND STIPULATION FOR USE OF CASH COLLATERAL

Cal. 1988). Under the facts present here, allowing the Debtor to continue operations through the use of Cash Collateral as proposed by the Stipulation satisfies this standard.

**B.      The Cash Collateral Budget is Designed to Maintain and Improve Operations and Facilitate a Restructuring.**

The budgets incorporated by the Stipulation (the "**Budgets**") are a result of months of professional management by Sares Regis and analysis by Force 10 and is a proven budget on the costs of Fu Bang's operations. In addition to the operations budget, the Stipulation calls for an allowance of certain expenses deemed necessary by Mr. Rubin to enable the Debtor to obtain the financing needed to reorganize and exit bankruptcy. The Stipulation is a result of many months of negotiation and analysis by and among the Debtor, its professionals, and the Secured Lenders and is designed to give the Debtor the opportunity to confirm a plan and maximize return for creditors. The Stipulation (with attached Budgets) as executed by the Debtor and the Secured Lenders are attached hereto as **Exhibit 1**.

**C.      Secured Lenders' Interests Shall be Protected by a Replacement Liens and Superpriority Claims**

Section 361 of Bankruptcy Code explicitly provides that "adequate protection may be provided by . . . [a] replacement lien to the extent that such . . . use [of cash collateral] results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(2); *See Timbers*, 484 U.S. at 370.  With respect to the security interest asserted by Secured Lenders in the Debtor's assets, Secured Lenders will be granted replacement liens in Fu Bang's post-petition cash and other assets, to the same extent, validity, and priority as the Cash Collateral actually used by the Debtor. The Stipulation sets forth all rights and interests granted to the Secured Lenders in exchange for the Debtor's use of Cash Collateral.

/ / /

/ / /

/ / /

/ / /

/ / /

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-7-

## V.    CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Motion be granted. Debtor should be authorized to use Cash Collateral as agreed to with the Secured Lenders and as set forth in the Stipulation.

Dated:  May 14, 2026                **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

By: */s/ Derrick Talerico*
　　　Derrick Talerico
　　　Attorneys for Fu Bang Group Corp, USA, and
　　　Dos Lagos Center 2, LLC,
　　　Debtors and Debtors in Possession

**WEINTRAUB ZOLKIN TALERICO & SELTH LLP**
**11766 WILSHIRE BLVD., SUITE 730**
**LOS ANGELES, CA 90025**

-8-
MOTION TO APPROVE SECOND STIPULATION FOR USE OF CASH COLLATERAL

**DECLARATION OF NICHOLAS RUBIN**

I, Nicholas Rubin, declare as follows:

1.      I am a partner with Force Ten Partners, LLC ("Force Ten"), which is a financial advisory firm with its principal office located at 5271 California Avenue, Suite 270, Irvine, California, 92617. Force Ten also has offices in the Los Angeles, Dallas, and Las Vegas metro areas. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the *Motion for Entry of an Orde Approving Second Stipulation Authorizing Use of Cash Collateral* (the "Motion").

2.      Upon assuming his role as CRO, I familiarized himself with the Debtors' Property, operations, and history. In consultation with Bo Don (Fu Bang's CEO and Authorized Representative of DLC2), Debtors' bankruptcy counsel, and Force Ten, I analyzed the best means of returning value to the Debtors' creditors including immediate sale, short term management, and long-term hold. I concluded that the optimal means of managing the Debtors' estates for the benefit of all interest holders – creditors and equity alike – is to obtain a targeted amount of funding (DIP or exit financing) to take out certain allowed secured claims, stabilize and optimize leasing operations, ensure compliance with all state and local real property regulations, and prepare the Debtors' Property for a market sale in twelve to eighteen months.

3.      To obtain financing and position the Property for sale, the Fu Bang Property required engagement of specialized professional property management to run the leasing and daily operations at the Fu Bang Property. A stabilized and optimized operation is necessary to demonstrate the viability of the asset for the financing needed to restructure the Debtors. To that end, the Debtors retained Sares Regis, who have been successful in managing the Fu Bang leasing operation.

4.      I am now focused on obtaining financing to fund an exit from bankruptcy that will maximize return to creditors. The continued use of Cash Collateral provided by the Stipulation will give the Debtors' the operational runway needed to make the Debtors' cases a success.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

MOTION TO APPROVE SECOND STIPULATION FOR USE OF CASH COLLATERAL

5.      It is my business judgment that it is in the best interest of the estate and its creditors to continue to maintain the Debtor's business operations, as liquidation would generate little to no recovery for general unsecured creditors and funding for the reorganization is entirely dependent upon ongoing business operations.

6.      The Budgets incorporated by the Stipulation are a result of months of professional management by Sares Regis and analysis by Force 10 and is a proven budget on the costs of Fu Bang's operations. In addition to the operations budget, the Stipulation calls for an allowance of certain expenses I deem to enable the Debtor to obtain the financing needed to reorganize and exit bankruptcy. The Stipulation is a result of many months of negotiation and analysis by and among the Debtor, its professionals, and the Secured Lenders and is designed to give the Debtors the opportunity to confirm a plan and maximize return for creditors. The Stipulation (with attached Budgets) as executed by the Debtor and the Secured Lenders is attached to the Motion as **Exhibit 1**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 14, 2026, at Washington, D.C.

_____
Nicholas Rubin, Chief Restructuring Officer

**WEINTRAUB ZOLKIN TALERICO & SELTH LLP**
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-10-
MOTION TO APPROVE SECOND STIPULATION FOR USE OF CASH COLLATERAL

# EXHIBIT 1

# Stipulation

EXHIBIT 1 - Page 11

Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
Paige T. Rolfe (State Bar No. 331096)
prolfe@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone:  (424) 500-8552

Attorneys for Fu Bang Group Corp, USA, and
Dos Lagos Center 2, LLC,
Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>FU BANG GROUP CORP (USA),<br><br>Debtor. | Lead Case No. 6:25-bk-13004-SY<br><br>Chapter 11 |
| In re:<br><br>DOS LAGOS CENTER 2, LLC,<br><br>Debtor. | Jointly Administered with:<br>Case No. 6:25-bk-13642-SY |
| ☐ Affects All Debtors.<br>☒ Affects Fu Bang Group Corp (USA)<br>    Case No. 6:25-bk-13004-SY.<br>☐ Affects Dos Lagos Center 2, LLC<br>    Case No. 6:25-bk-13642-SY.<br><br>Debtors. | **SECOND STIPULATION FOR ENTRY OF ORDER AUTHORIZING USE OF CASH COLLATERAL** |

-1-
SECOND STIPULATION FOR USE OF CASH COLLATERAL

**EXHIBIT 1 - Page 12**

Fu Bang Group Corp, USA (the "**Debtor**" or "**Fu Bang**"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Bankruptcy Case**"), First Credit Bank ("**FCB**"), and Sparknest, LLC ("**Sparknest**," with FCB, the "**Secured Lenders**," and collectively with Debtor, the "**Parties**," and each a "**Party**") by and through their respective counsel of record, hereby enter into this stipulation ("**Stipulation**") concerning the Debtor's use of Secured Lenders' cash collateral with respect to the real property located at 2798 Troy Court, Corona, CA 92883 (the "**Property**").

<u>**Recitals**</u>

WHEREAS on May 7, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code;

WHEREAS on March 18, 2016, FCB made a loan ("**FCB Loan**") to Debtor evidenced by a Promissory Note in the principal amount of $12,000,000 (the "**FCB Note**"). The obligations due on the FCB Note are secured by a Construction Deed of Trust ("**FCB DOT**") in favor of FCB by which Debtor granted FCB a senior first priority security interest in the Property and rents generated therefrom (the "**Collateral**");

WHEREAS, prior to the Petition Date, the Debtor was in default under the FCB Note for among other reasons, failing to make payments as required by the FCB Note and failure to pay real property taxes assessed against the Property.  As a result of the default, FCB accelerated the maturity of the FCB Loan, declared the entire indebtedness to be immediately due and payable, and revoked the license to collect rents, issues, and profits from the Property pursuant to the absolute assignment of rents in the FCB DOT.  A Notice of Default and Notice of Sale were subsequently recorded, and a non-judicial foreclosure sale of the Property was scheduled for May 21, 2025;

WHEREAS, on or about October 12, 2021, Mingzhe Li ("**Li**") made a loan to Debtor evidenced by an Installment Note in the principal sum of $2,000,000 (the "**Installment Note**"). The obligations due on the Installment Note are secured by a Deed of Trust with Assignment of Rents (the "**Li DOT**") in favor of Li by which Debtor granted Li a security interest in the Collateral, which also includes the Property and rents generated therefrom. On or about September

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

30, 2024, Sparknest purchased the Installment Note and received an assignment of the Li DOT;

WHEREAS, prior to the Petition Date, the Debtor was in default under the Installment Note for among other reasons, failing to make payments as required by the Installment Note.  As a result of the default, Sparknest accelerated the maturity of the Installment Loan, declared the entire indebtedness to be immediately due and payable, and revoked the license to collect rents, issues, and profits from the Property pursuant to the absolute assignment of rents in the Li DOT.  A Notice of Default and Notice of Sale were subsequently recorded, and a non-judicial foreclosure sale of the Property was scheduled to proceed, which was stayed as a result of the instant bankruptcy filing;

WHEREAS, Secured Lenders assert that the Collateral, which consists of substantially all of Debtor's assets is Secured Lenders' cash collateral pursuant to Sections 552(b) and 363(a) of the Bankruptcy Code (the "**Cash Collateral**");

WHEREAS, Secured Lenders assert that they hold respective valid, perfected, enforceable and unavoidable security interests in, without limitation, all of the Cash Collateral.  Accordingly, pursuant to Sections 552(b), 363(a) and 363(c)(2) of the Bankruptcy Code, the Debtor is prohibited from using the Cash Collateral absent Secured Lenders' consent to such use of a court order authorizing such use;

WHEREAS, the Parties submitted a Stipulation for Entry of an Order Authorizing Use of Cash Collateral on September 8, 2025 (the "**First Stipulation**") [Dkt. 108] that was effective through October 2025;

WHEREAS, the Debtor has used Cash Collateral as set forth in the Monthly Operating Reports filed in the Bankruptcy Case;

WHEAREAS, pursuant to the First Stipulation, since July 2025, FCB and Sparknest have each received $10,000 per month Adequate Protection Payments and

WHEREAS, the Parties have negotiated terms for Debtor's continued use of cash collateral during the Bankruptcy Case and approve the following terms and conditions on a final basis.

## STIPULATION

NOW, THEREFORE, IT IS STIPULATED AND AGREED as follows:

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

1.    Recitals.  The Recitals are incorporated herein by this reference.  The Parties agree that the matters set forth in the Recitals are true and correct.

2.    Adequate Protection.  Debtor will continue to make monthly adequate protection payments of $10,000 each to FCB and Sparknest (each payment an "**Adequate Protection Payment**") on the 15th of every month (or the Monday following the 15th should the 15th fall on a weekend or holiday) during Debtor's bankruptcy case.

3.    Definition of Cash Collateral.  The term "**Cash Collateral**," as that term is used in this Stipulation, includes, without limitation, all of the pre-petition and post-petition proceeds derived from or in connection with the Collateral. Secured Lenders hold respective valid, enforceable, perfected and unavoidable security interests and liens in the Cash Collateral within the meaning of Sections 552(b) and 363(a) of the Bankruptcy Code whether existing pre-petition or post-petition, and whether or not in the possession, custody or control of the Debtor.

4.    Use of Cash Collateral. Debtor may use cash collateral, and specifically rents generated by the Property, to pay for the regular and ordinary operating expenses of the Property pursuant to the budget attached hereto as **Exhibit 1** ("**Budget**"), subject to the terms and conditions set forth hereinbelow:

a.    All Cash Collateral derived from and/or produced by the Collateral shall be deposited, upon receipt by the Debtor or its agents or employees, in accounts designated by the Debtor with the Office of the United States Trustee ("**DIP Accounts**"). The Debtor shall deliver copies of the monthly bank statements for the DIP Accounts to Lender within three business days of the Debtor's receipt of such statements from its bank(s).

b.    The Cash Collateral shall not be used by the Debtor or its agents or employees, or any other person or party, for any purpose, other than as is specifically provided in this Stipulation and the Budget or pursuant to prior written authorization of Secured Lenders or an order of the Bankruptcy Court. The Debtor shall not withdraw any funds from the DIP Accounts without Secured Lenders' express written consent or Bankruptcy Court authorization, except to pay an item reflected in the Budget or otherwise authorized by the Secured Lenders or approved by the Bankruptcy Court.

c.    The Debtor's right to use Cash Collateral shall continue through the occurrence of a Default as defined in Paragraph 13, herein, following written notice and a three (3) day cure period.

d.    The use budget and uses of cash set forth for April in the Budget shall be the same monthly budget approved for May through August 2026;

e.    In addition to the items set forth in the Budget, Debtor is also authorized to use Cash Collateral for the purposes of obtaining certain property and title reports as set forth in the budget attached hereto as Exhibit 2 (the "**Reports Budget**"). The Debtor may exceed any specific line item on the Reports Budget up to a 15% variance so long as the total amount of the Reports Budget expenses does not exceed $85,000 (the "**Reports Cap**"). The Debtor may exceed the Reports Cap as later agreed to by both of the Secured Lenders, the terms and conditions of which, to be effective, must be memorialized in email communications among counsel for the Secured Lenders and the Debtor.

f.    In addition to the items set forth in the Budget and the Reports Budget, Debtor is authorized to use up to $25,000 of cash collateral to fund legal fees required to pursue unlawful detainer actions against non-paying tenants;

g.    Except as provided in this Stipulation, the Debtor must request and obtain Secured Lenders' prior written consent or Bankruptcy Court authorization to use any Cash Collateral to pay for any unbudgeted expenses or any budgeted expenses in excess of the variance allowed from the budgeted amount set forth in the Budget attached hereto, pursuant to the following sub-section 2(f).

h.    Budget Variance. The Debtor may exceed any specific line item on the Budget up to a 15% variance in any given month so long as the total amount of expenses for the month does not exceed 5% of the total Budget. To the extent the Debtor spends less than the amount provided in the Budget for any given line item in any given month, a credit for that line item will carry over to the next month, which credit shall be drawn upon before accounting for the monthly line item expense provided for in the Budget.

5.    Replacement Liens.    Secured Lenders shall be granted valid, perfected, and

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-5-
SECOND STIPULATION FOR USE OF CASH COLLATERAL

EXHIBIT 1 - Page 16

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

enforceable replacement liens in their respective priorities in all of the Debtor's post-petition assets, Collateral and Cash Collateral now owned or hereafter acquired, excluding avoidance claims and causes of action under Chapter 5 of Title 11 of the United States Code. The replacement liens granted to Secured Lenders shall secure replacement to Secured Lenders of the actual amount of Cash Collateral utilized by the Debtor in the period subsequent to the Petition Date up to the full amount of the respective Secured Lenders' interest in Cash Collateral. The replacement liens shall be of the same order of priority and nature as the respective Secured Lenders' pre-petition liens described in recitals above. The replacement liens and security interests granted herein are and shall be valid, enforceable and fully perfected, and no filing or recordation, or other act in accordance with any applicable local, state or federal law is necessary to create or perfect such lien and security interest.

6.    Liens on DIP Accounts.  Secured Lenders shall be granted valid, perfected and enforceable replacement liens in their respective priorities in the DIP Accounts to the same extent, priority and validity of respective Secured Lenders' pre-petition security interests in pre-petition accounts. By the Bankruptcy Court's Order approving this Stipulation, Secured Lenders' security interests in the DIP Account will be deemed valid, enforceable, and fully perfected, and no filing or recordation, or other act in accordance with any applicable local, state or federal law is necessary to create or perfect such lien and security interest.

7.    Superpriority Claims.  To the extent either of the Secured Lenders' interests in Cash Collateral are not adequately protected by the adequate protection payments set forth in Paragraph 2, *supra*, and in accordance with Bankruptcy Code Section 364(c)(1), the Debtor's pre- and post-petition obligations to the affected Secured Lender(s) shall constitute claims (the "**Superpriority Claims**") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), and 726, and shall at all times be senior to the rights of the Debtor, and any successor trustee or any creditor in this Bankruptcy Case or any subsequent proceedings under the Bankruptcy Code, including any subsequent proceedings under Chapter 7.  No cost or expense of administration under Bankruptcy

Code Sections 105, 503(b), 507(b), or otherwise shall be senior to, or *parri passu* with, the Superpriority Claims. Nothing herein shall affect or impair Secured Lenders' right to seek additional adequate protection of their respective interests.

8.    No Further Encumbrances.  The Debtor shall not grant, nor suffer to be granted, any lien or encumbrance on the Collateral, Cash Collateral or DIP Accounts unless and until Secured Lenders' secured claims are paid in full, or unless the affected Secured Lender(s) consented in writing to such lien or encumbrance.

9.    No Admission Regarding Adequate Protection.  Nothing contained in the Stipulation or the order approving same shall be deemed to constitute an admission that Secured Lenders, or any of them, are adequately protected except as to the Debtor's use of Cash Collateral as prescribed in the Stipulation.

10.    Interim Value of Property.  The rights granted in this Stipulation are for the purpose of the Debtor's use of the Collateral and to afford adequate protection to Secured Lenders of any such collateral interest they may have in such Collateral and/or Cash Collateral.  The Parties have not reached an agreement regarding the value of the Collateral for purposes of the amount of Secured Lenders' allowed secured claims and future adequate protection payments. Nothing contained in this Stipulation shall be deemed to constitute an admission by any Party regarding the value of the Collateral.

11.    Insurance.  The Debtor shall maintain insurance that complies with the requirements as set forth within the guidelines of the Office of the United States Trustee and that is consistent with the coverage required in any loan documents of any of the Secured Lenders, including the Secured Lenders as additional insured parties. The Debtor shall make any necessary changes to indicate Secured Lenders as the loss payees on such insurance and shall provide evidence of the same to Secured Lenders.

12.    Retention of Broker. Debtor agrees to engage a broker to market and sell the Property under the following circumstances:

a.    If by August 1, 2026 Debtor has not obtained a loan commitment sufficient to repay the Secured Lenders and fund Debtor's intended plan, Debtor shall seek authority from the

Bankruptcy Court by September 1, 2026 to engage a broker to market and sell the Property;

b.   If by August 1, 2026 Debtor has obtained a loan commitment sufficient to repay the Secured Lenders and fund Debtor's intended plan, Debtor shall have until November 1, 2026 for such loan to close and fund, whether through a motion to approve DIP financing pursuant to Section 364 or pursuant to a plan to approve exit financing. If the loan has not closed by November 1, 2026, Debtor shall seek authority from the Bankruptcy Court by December 1, 2026 to engage a broker to market and sell the Property.

13.    Termination of Stipulation.  This Stipulation and the Debtor's rights to use Cash Collateral shall terminate upon the occurrence of any of the following events (each such event a "**Default**" and collectively, the "**Defaults**"):

a.   The Debtor's failure to perform any term of this Stipulation and to cure such breach within three (3) days after the Debtor's receipt of written notice from the affected Secured Lender(s) of such claimed breach, with any dispute over any uncured breach to be resolved by an emergency motion made to the Court with proper notice;

b.   Entry of an order (i) granting any creditor other than Secured Lenders relief from the automatic stay to exercise any rights which may impair the Collateral, or (ii) converting or dismissing the case;

c.   The Debtor's failure to maintain insurance as required above;

d.   The Debtor's failure to make any of the payments to Secured Lenders as described in this Stipulation;

e.   Termination of the automatic stay under 11 U.S.C. § 362(a) in favor of any of the Secured Lenders; and

f.   The appointment of a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104;

g.   If either of the conditions for retaining a broker pursuant to Section 12 occur, and the Debtor has not brought a motion to approve a sale of the Property within three months of Bankruptcy Court approval of the broker.

14.    Further Authority to Use Cash Collateral.  The Debtor shall file a proposed new budget by no later than August 1, 2026, pursuant to which the Debtor seeks authority to use Cash

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Collateral beyond August 31, 2026, assuming that cash collateral authority has not been terminated in advance thereof, pursuant to the terms of this Stipulation. If Secured Lenders, or any of them, have any objection to the continued use of Cash Collateral beyond August 31, 2026, such Secured Lender shall file its objection by no later than 14 days in advance of any hearing on Debtor's Motion for further cash collateral use, with any reply to such objection to be filed by the Debtor at least seven days in advance of such hearing. If Secured Lenders consent to continued use of Cash Collateral based upon the budget filed by the Debtor on or before August 1, 2026, then the parties shall file a stipulation and proposed order in accordance with such agreement.

15.     No Prejudice.  This Stipulation is without prejudice to Secured Lenders' right, during the pendency of the term of this Stipulation, to seek any relief from the Bankruptcy Court or any other court that it deems appropriate. This Stipulation is for the limited purpose of providing for the Debtor's use of the Cash Collateral on an interim basis and nothing contained in this Stipulation, or any delay or failure by Secured Lenders, or any of them, in exercising any right, power or privilege under the Stipulation, shall prejudice or be construed as a waiver of or affecting or impairing any rights, remedies, defaults, claims or admissions, which either any of the Secured Lenders or Debtor may have against the other.

16.     Automatic Stay.  The automatic stay pursuant to Section 362 of the Bankruptcy Code is lifted and modified only to the extent necessary to permit the actions and events set forth herein.

17.     General Provisions.

a.     Further Assurances.  All Parties will execute and deliver all such further documents and take such further action as any party may from time-to-time reasonably request for the preservation to the parties of their rights hereunder and under all related agreements.

b.     Assignability.  This Stipulation shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns except that the Debtor's rights hereunder are not assignable expressly, explicitly, by operation of law, or otherwise.

c.     Binding Effect.  The terms and conditions of this Stipulation shall be res judicata and binding upon any successor estate and upon any trustee appointed herein or in any successor

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

estate.

d.    Neutral Construction.  Each of the Parties hereto has been involved in the negotiation of this Stipulation and has received legal advice from its attorneys with respect to the execution of this Stipulation.  The Parties hereto shall be considered to be the joint authors of this Stipulation.

e.    Integration.  Except as expressly provided in this Stipulation, this Stipulation is the final written expression of all of the agreements, conditions and covenants among the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements and negotiations among the parties and/or their respective counsel with respect to the subject matter covered hereby.

f.    Bankruptcy Court Order.  This Stipulation shall be submitted forthwith to the Bankruptcy Court for approval.

g.    Binding on Successors.  This Stipulation shall be binding on the Debtor, and any and all assigns and/or successors-in-interest to the Debtor, including but not limited to any trustee appointed in the Chapter 11 proceeding, or any trustee in a Chapter 7 proceeding if the case is converted, and in any future bankruptcy proceeding in which any of the collateral is claimed and/or determined to be property of the estate; provided however, that this Stipulation is not intended to adjudicate any other secured or unsecured creditor's respective rights.

h.    No Agreement to Provide Financial Accommodation.  No provision of this Stipulation shall in any way impose upon Secured Lenders, or any of them, any duty or obligation to provide any financing or financial accommodation to the Debtor or any other party to collect, sell, lease or otherwise dispose of any of the Cash Collateral, to proceed against any party, person, individual or entity, to proceed against or exhaust any security held by Secured Lenders, or any of them, or any other party, person, individual or entity, or to otherwise pursue any action, right or remedy in Secured Lenders' power whatsoever.

i.    Execution in Counterparts.  This Stipulation may be executed in several counterparts and any and all such executed counterparts shall constitute a single agreement binding on each Party hereto.  Furthermore, facsimiles or electronic versions of signatures may be taken as

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

the actual and original signatures.

IT IS SO STIPULATED.

Dated: May 5, 2026              **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

By _/s/ Derrick Talerico_
          Derrick Talerico
Counsel to Fu Bang Group Corp, USA,
Debtor and Debtor in Possession

**STINSON, LLP**
Dated: May __6__, 2026          ~~**LEECH TISHMAN NELSON HARDIMAN, INC.**~~

By _Dennette Mulvaney_
          Dennette A. Mulvaney
Counsel to First Credit Bank

Dated: May ____, 2026          **LEVENE NEALE BENDER
YOO & GOLUBCHIK L.L.P.**

By_____
          David Golubchik
Counsel to Sparknest, LLC

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-11-
SECOND STIPULATION FOR USE OF CASH COLLATERAL

EXHIBIT 1 - Page 22

the actual and original signatures.

IT IS SO STIPULATED.

Dated:  May 5, 2026         **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

By _/s/ Derrick Talerico_
Derrick Talerico
Counsel to Fu Bang Group Corp, USA,
Debtor and Debtor in Possession

Dated:  May ____, 2026        **LEECH TISHMAN NELSON HARDIMAN, INC.**

By _____
Dennette A. Mulvaney
Counsel to First Credit Bank

Dated:  May 6, 2026         **LEVENE NEALE BENDER
YOO & GOLUBCHIK L.L.P.**

By _____
David Golubchik
Counsel to Sparknest, LLC

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-11-
SECOND STIPULATION FOR USE OF CASH COLLATERAL

EXHIBIT 1 - Page 23

# EXHIBIT 1

EXHIBIT 1 - Page 24

**FU BANG GROUP CORP, USA Cash Flow Budget**
*4 Month Budget*
*DRAFT Dated April 2, 2026*

**Reporting period**

| January 2026 to April 2026 |
|---|

| | Month 1 2026 Jan 01/31/26 Budget | Month 2 2026 Feb 02/28/26 Budget | Month 3 2026 Mar 03/31/26 Budget | Month 4 2026 Apr 04/30/26 Budget | Cumulative Jan to Apr Budget |
|---|---|---|---|---|---|
| Week Ending --> | | | | | |
| **Rental Income** | | | | | |
| Apartment Rent | 106,897 | 104,635 | 104,635 | 102,094 | 418,260 |
| Other Income | - | - | - | - | - |
| **RENTAL INCOME** | **106,897** | **104,635** | **104,635** | **102,094** | **418,260** |
| **Property Operating Expenses** | | | | | |
| Payroll | (16,305) | (23,065) | (16,413) | (16,413) | (72,196) |
| Marketing | (3,275) | (3,275) | (4,125) | (4,125) | (14,799) |
| Turnover Costs | - | - | - | - | - |
| Repairs & Maintenance | (6,484) | (11,058) | (9,493) | (9,493) | (36,529) |
| Startup Costs for Property Manager | - | - | - | - | - |
| Capital Repairs & Replacements | (5,000) | (15,000) | (15,000) | (5,000) | (40,000) |
| Utilities | (5,772) | (5,772) | (5,772) | (5,772) | (23,088) |
| General & Administrative | (1,728) | (1,728) | (1,728) | (1,728) | (6,912) |
| Management Fee | (9,000) | (9,000) | (9,000) | (9,000) | (36,000) |
| **PROPERTY OPERATING EXPENSES** | **(47,564)** | **(68,897)** | **(61,531)** | **(51,531)** | **(229,524)** |
| **Property Operating Cash Flow** | **59,333** | **35,737** | **43,103** | **50,563** | **188,736** |
| **Detor Operating Expenses** | | | | | |
| Taxes & Insurance | (2,019) | (2,019) | (2,019) | (2,019) | (8,076) |
| Protective Payments | (20,000) | (20,000) | (20,000) | (20,000) | (80,000) |
| HOA | (1,000) | (1,000) | (1,000) | (1,000) | (4,000) |
| Other | (250) | (250) | (250) | (250) | (1,000) |
| **DEBTOR OPERATING EXPENSES** | **(23,269)** | **(23,269)** | **(23,269)** | **(23,269)** | **(93,076)** |
| **Total Cash Flow** | **36,064** | **12,468** | **19,834** | **27,294** | **95,660** |
| **Professional and Restructuring Fees** | | | | | |
| **Debtor Professionals** | | | | | |
| Weintraub Zolkin Talerico & Selth LLP | (10,000) | (10,000) | (10,000) | (10,000) | (40,000) |
| Force Ten Partners LLC | (15,000) | (15,000) | (15,000) | (15,000) | (60,000) |
| Other Professionals | - | - | - | - | - |
| **Ch. 11 Related Expenses** | | | | | - |
| Office of the U. S. Trustee | (1,600) | - | - | (1,250) | (2,850) |
| **PROFESSIONAL AND RESTRUCTURING FEES** | **(26,600)** | **(25,000)** | **(25,000)** | **(26,250)** | **(102,850)** |
| **Cash** | | | | | |
| Beginning Cash | 313,787 | 323,251 | 310,719 | 305,554 | 313,787 |
| Ending Cash | 323,251 | 310,719 | 305,554 | 306,597 | 306,597 |

**EXHIBIT 1 - Page 25**

# EXHIBIT 2

**EXHIBIT 1 - Page 26**

## DOS LAGOS — Reports Budget
4621 Odyssey Drive, Corona, CA 92883  |  Prepared by Force 10 Partners  |  April 2026

| Consultant | Scope Item | Fee | Fee Type | Notes |
|---|---|---|---|---|
| **LEGAL / LAND USE** | | | | |
| **Cox, Castle & Nicholson** | GP Discrepancy Assessment | $15,000 | T&M Est. | Scope 1 |
| | Entitlement Path / Strategy | $10,000 | T&M Est. | Scope 2 |
| | **Cox, Castle & Nicholson Subtotal** | **$25,000** | | |
| **CIVIL ENGINEER** | | | | |
| **X Engineering (XEC)** | ALTA Land Title Survey | $23,400 | Fixed | Incl. condo plan mapping |
| | Aerial Topographic Survey | $4,500 | Fixed | Photogrammetry |
| | Civil Engineering Assessment | $7,500 | Hourly Est. | T&M; DD review |
| | Meetings & Coordination | $2,500 | Hourly Est. | 36 hrs estimated |
| | **X Engineering Subtotal** | **$37,900** | | |
| **ENVIRONMENTAL ENGINEER** | | | | |
| **Thornburgh Consulting** | Phase I ESA | $3,250 | Flat | ASTM E1527-21 |
| | Property Condition Assessment | $3,840 | Flat | ASTM E2018-15; subcontracted |
| | Ltd. Hazmat Survey | $5,310 | Flat | Asbestos survey, HazMat inventory |
| | Report Review / PM | $1,630 | Flat | Cover letter & oversight |
| | **Thornburgh Consulting Subtotal** | **$14,030** | | |
| **ARCHITECT / SITE PLANNING** | | | | |
| **WHA (Wm. Hezmalhalch Architects)** | Yield Studies / Site Planning | $8,000 | T&M Est. | 1-2 conceptual site plans, stats |
| | **WHA Subtotal** | **$8,000** | | |
| **TOTAL DUE DILIGENCE BUDGET** | | **$84,930** | | |

EXHIBIT 2

**EXHIBIT 1 - Page 27**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

   11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **Motion for Entry of Order Approving Second Stipulation Authorizing Use of Cash Collateral** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 14, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached NEF service list

☒   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  May 14, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott Yun                              (via Priority Mail)
United States Bankruptcy Court
3420 Twelfth St., Suite 345
Riverside, CA 92501-3819

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 14, 2026 | Martha E. Araki | /s/ Martha E. Araki |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

In re Fu Bang Group Corp, USA and Dos Lagos Center 2, LLC (Jointly Administered)   Lead Case No. 6:25-bk-13004-SY

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- <u>Attorneys for Debtors Fu Bang Group Corp (USA) and Dos Lagos Center 2, LLC</u>: **Derrick Talerico**:
  dtalerico@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com; admin@wztslaw.com
- <u>Attorneys for Defendants Central Trading Corp., RDD Freight International (LA) Inc., SZ Properties LLC, Sierra Home
  Material Trade Inc., U.S. Discount Center Corp. and Lang Zhang</u>: **Paul A Beck**: pab@pablaw.org;
  raychael@pablaw.org
- <u>Attorneys for Creditor Sparknest, LLC, a Delaware limited liability company</u>: **David B Golubchik**: dbg@lnbyg.com
- <u>Attorneys for Creditors Cheukhing Lau, Cong Liu, Dabao Guan, Guangquan Liang, Haifeng Zhang, Haochang Huant,
  Lijuan Ye, Lin Li, Mingxia Lu, Saiying Xiao, and Yiyi Liang</u>: **Siyao Lin**: lin.silvacy@gmail.com
- <u>Attorneys for Creditor First Credit Bank and Attorney Dennette A Mulvaney</u>: **Dennette A Mulvaney**:
  dmulvaney@leechtishman.com; lmoya@leechtishman.com; narango@leechtishman.com;
  dbender@leechtishman.com
- <u>Attorneys for Creditor Na Jiang</u>: **Jeffrey S Shinbrot**: jeffrey@shinbrotfirm.com; sandra@shinbrotfirm.com;
  tanya@shinbrotfirm.com
- <u>On behalf of the U.S. Trustee (RS)</u>: **Abram Feuerstein, Ali Matin**: abram.s.feuerstein@usdoj.gov;
  ali.matin@usdoj.gov
- <u>US Trustee's Office (RS)</u>: ustpregion16.rs.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**