SIYAO LIN (State Bar No. 355138)
slin@reidwise.com
MATTHEW J. LIVINGSTON (Admitted Pro Hac Vice)
mlivingston@reidwise.com
REID & WISE, LLC
One Penn Plaza, Suite 2015
New York, NY 10119

Attorneys for Judgment Lienholders
Mingxia Lu, et al. (Claim No. 6)

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

In re:
FU BANG GROUP CORP (USA),
Debtor.

In re:
DOS LAGOS CENTER 2, LLC,
Debtor.

☒ Affects All Debtors.
☐ Affects Fu Bang Group Corp (USA) Case No. 6:25-bk-13004-SY.
☐ Affects Dos Lagos Center 2, LLC Case No. 6:25-bk-13642-SY.

Lead Case No. 6:25-bk-13004-SY
Chapter 11
Jointly Administered with:
Case No. 6:25-bk-13642-SY

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF JUDGMENT LIENHOLDERS MINGXIA LU, ET AL. (CLAIM NO. 6) TO DEBTORS' MOTION TO SELL REAL PROPERTY TO REAL ESTATE INCOME FUND I LLC AND RELATED RELIEF [DKT. 186]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Hearing:**
Date: November 5, 2026
Time: 1:30 p.m.
Crtrm: 302
Place: 3420 Twelfth Street
Riverside, CA 92501

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........ 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ........ 3

**I. STATEMENT OF FACTS** ........ 3

A. The Judgment Lien ........ 3

B. The Sale and the Competing Offers ........ 4

C. The Buyer's Affiliates, the Support Agreement, and the Backstop ........ 5

**II. ARGUMENT** ........ 6

A. The Sale Should Be Approved Without Any Assumption (Or Finding) That the Lu Lienholders' Lien Will Be Subordinated. ........ 6

B. Rejecting the $22,000,000 Offer Is Not a Sound Business Judgment as to the Creditor Who Bears the Cost of Accepting the Lower Offer. ........ 7

C. The Debtors' § 510(b) Theory Is Not a Ground for Any Sale-Order Relief, and It Fails on Its Face. ........ 9

D. The Price Allocation Between Parcels Must Be Decided on Notice, Before Any Distribution. ........ 10

E. Administrative Insolvency, If Asserted, Is Not a Ground to Take the Lien Creditors' Collateral. ........ 10

F. The Record Does Not Support a § 363(m) Finding or Waiver of the Stay. ........ 11

**III. REQUESTS AND CONCLUSION** ........ 12

# TABLE OF AUTHORITIES

**Cases**

*240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners, Ltd.)*, 200 B.R. 653 (B.A.P. 9th Cir. 1996) ........ 7

*Central Bank of Montana v. Cascade Hydraulics & Util. Serv., Inc. (In re Cascade Hydraulics & Util. Serv., Inc.)*, 815 F.2d 546 (9th Cir. 1987) ........ 10

*Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017) ........ 11

*Ewell v. Diebert (In re Ewell)*, 958 F.2d 276 (9th Cir. 1992) ........ 11

*Goodwin v. Mickey Thompson Ent. Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*, 292 B.R. 415 (B.A.P. 9th Cir. 2003) ........ 8

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000) ........ 10

*In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986) ........ 11

*In re Wilde Horse Enters., Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991) ........ 7

*Law v. Siegel*, 571 U.S. 415 (2014) ........ 11

*Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282 (B.A.P. 9th Cir. 2005) ........ 2, 7

*Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624 (B.A.P. 8th Cir. 2004 ........ 9

*Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14 (B.A.P. 9th Cir. 1988) ........ 7

**Statutes & Codes**

11 U.S.C. § 105(a) ........ 11

11 U.S.C. § 1112(b)(4)(A) ........ 11

11 U.S.C. § 1129(a)(9)(A) ........ 11

11 U.S.C. § 363(b) ........ 7

11 U.S.C. § 363(f)(4) ........ 9

11 U.S.C. § 363(m) ........ 11

11 U.S.C. § 506(c) ........ 10

11 U.S.C. § 510(b) ........ 5, 9

Cal. Civ. Code § 2899 .......... 10

**Rules**

C.D. Cal. LBR 6004-1(c)(2)(B) .......... 5, 8
Fed. R. Bankr. P. 6004(h) .......... 11
Fed. R. Bankr. P. 6006(d) .......... 11
Fed. R. Bankr. P. 7001 .......... 9

TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY JUDGE, THE DEBTORS AND THEIR COUNSEL, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:

Cheukhing Lau, Cong Liu, Dabao Guan, Guangquan Liang, Haifeng Zhang, Haochang Huang, Lijuan Ye, Lin Li, Mingxia Lu, Saiying Xiao, and Yiyi Liang (collectively, the "Lu Lienholders"), holders of Claim No. 6 in the amount of $7,061,487.67, secured by a recorded judgment lien against the Fu Bang Parcel (APN 279-460-064) in the recorded amount of $5,830,000.00 as of May 8, 2023, submit this limited objection (the "Objection") to the *Debtors' Motion for Order (1) Authorizing Private Sale of Real Property to Real Estate Income Fund I LLC, Not Subject to Overbid, Free and Clear of Liens, Claims, and Interests; (2) Authorizing Assumption and Assignment of Leases and Contracts; (3) Authorizing Entry into Plan Support and Subordination Agreement and Acceptance of Backstop Commitment; (4) Finding Good Faith Under 11 U.S.C. § 363(m); and (5) Waiving 14-Day Stays* [Dkt. 186] (the "Motion").

**PRELIMINARY STATEMENT**

The Lu Lienholders are not opposed to a sale and commend the Debtors' efforts to realize value for the Debtors' creditors through a sale process. In fact, the Lu Lienholders welcome a sale closing this year and do not object to the Debtors distributing sale proceeds upon closing to lienholders in the order of their existing lien priority. They do, however, have three concerns with the sale as proposed.

*First*, the Motion treats subordination of the Lu Lienholders' lien as a *fait accompli*, as evidenced by the Plan Support Agreement and Backstop Commitment specifically excluding the Lu Lienholders and necessarily assuming subordination of the Lu Lienholders' lien. The Backstop Commitment is therefore providing an expectation of potential cash recovery to general unsecured creditors that can *only* be realized if the Lu Lienholders' lien is subordinated. While the Debtors state in their Motion that the Lu Lienholders' lien will attach to the held proceeds in its existing priority, Mot. at 26, as legally required, the Lu Lienholders must ensure that the sale is not premised or understood by the Court or other creditors (including those party to the Backstop Commitment) to *require* or in any way be conditioned on subordination of the

Lu Lienholders' lien. The Backstop Commitment excludes Claim 6 (the Lu Lienholders' claim) by name, and the CRO's business judgment rests on his expectation that the Lu Lienholders' lien will be "subordinated, by agreement or order, to general unsecured claims." Mot. at 31 (Declaration of Nicholas Rubin, hereinafter the "Rubin Decl.") ¶ 33.

The Debtors may seek subordination in an adversary proceeding, as they say they intend to do. But the sale does not depend on it and it should be made clear to all parties to these cases that the Lu Lienholders fully expect their lien to remain a valid lien attaching to the sale proceeds in its existing priority. Therefore, any value ascribed to the Backstop Commitment, insofar as it is entirely contingent on subordination of the Lu Lienholders' lien, should be viewed as contingent (and unlikely) to accrue to general unsecured creditors.

*Second*, and relatedly, the Debtors have not justified taking $20,750,000 from REIF when Blue Spring offered $22,000,000 with *no contingencies* and the same $300,000 non-refundable deposit. A buyer's demand that it not be overbid, as REIF has requested here, is a reason for closer scrutiny. The usual cure for a price objection, which the Lu Lienholders hereby submit, is to let the market answer it. *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 287–89 (B.A.P. 9th Cir. 2005). At a minimum, it seems prudent for this Court to permit overbids on an expedited timeframe, to ensure that the Blue Spring $22,000,000 offer is not in fact the best offer *or* that another offer does not emerge from REIF that would clearly surpass the Blue Spring $22,000,000 in value.

*Third*, the Lu Lienholders object to any attempt by the Debtors to apportion the sale proceeds between the Debtors' two land parcels (the "Fu Bang Parcel" and the "DLC2 Parcel") such that the value of the Fu Bang Parcel would be diminished without a proper evidentiary hearing. While the Debtors state that they plan to apportion the sale proceeds "based on a fair valuation of the separate parcels as part of the Debtors' plan process," this apportionment must be subject to review and approval by the Court and affected creditors. Mot. at 12.

None of these concerns requires stopping a sale in 2026 at this juncture. The subordination and allocation concerns can be resolved with straightforward Sale Order protective language: language making clear that the Lu Lienholders' lien attaches to the Fu Bang

Parcel proceeds in its existing priority; that nothing in the sale order finds, presumes, or requires the subordination of the Lu Lienholders' lien; and that no allocation of the price between the Debtors' two parcels will be made without notice and a hearing. To date, the Debtors have not filed a proposed sale order; the Lu Lienholders are hopeful that most of these proposed protective language issues can be resolved prior to the sale hearing currently scheduled for November 5, 2026.

The price concern can be resolved just as simply. The Lu Lienholders are the fulcrum creditor in any sale with a purchase price between $20.75 and $22 million,[1] so the $1,250,000 gap comes almost entirely out of their recovery, absent subordination. The Court should therefore (i) permit overbids by a date certain or (ii) require REIF to match the $22,000,000 offer in cash, rather than through the Backstop Commitment structure. As currently structured, the Backstop Commitment provides only for creditors junior in repayment priority to the Lu Lienholders and, by the Debtors' own admission, is the product of a sale of the EB-5 regional center entity from the Debtors' principal, Bo Chen, to an affiliate of the proposed REIF buyer, one day before the Sale Motion was filed.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

### A. The Judgment Lien

The Lu Lienholders obtained a $5,830,000.00 money judgment in *Mingxia Lu, et al. v. Dos Lagos Regional Center LLC, et al.*, Riverside County Superior Court Case No. CVRI2104945, entered March 29, 2023, against Fu Bang, DLRC, Chuan Dong (also known as Richard Don), and Bo Chen (also known as Bo Don). Ex. B (Judgment); Ex. C (Abstract of Judgment) items 1, 6, 8, 16–18; *see also* Dkt. 189, Ex. 5 ("October MIPA") § 1.01 (definition of "Pre-Closing Liability").[2] The Lu Lienholders recorded the abstract in the Official Records

---

[1] Based on the Debtors' own disclosures, no less than $15,049,410 plus accruing interest and expenses, of valid claims are senior in repayment priority to the Lu Lienholders' lien. Mot. at 11. As such, even if there were no accrued interest and expenses on these senior obligations, which is plainly not the case, the Lu Lienholders would not fully recover their claim plus accrued interest under a $22 million purchase price sale transaction and are therefore under secured and almost certainly the fulcrum creditor absent a materially higher proposed purchase price.

[2] The Lu Lienholders request that this Court take judicial notice of the Judgment and Abstract of Judgment.

of Riverside County on May 8, 2023, as Document No. 2023-0131129, two years before the petition date. Ex. C at 1. Claim 6 asserts $7,061,487.67. Ex. A. Fu Bang scheduled the lien as a judgment lien in the amount of $5,500,000.00, junior only to the Tax Collector, FCB, and Sparknest. Dkt. 25, Sched. D, line 2.2. Its chief executive officer, Bo Chen (also known as Bo Don), testified that the judgment "is currently a third priority lien against the Fu Bang Property." Dkt. 34, Ex. 1 ¶ 4. The Motion lists Claim 6 at $7,061,487.67 as a "Judgment lien (Fu Bang Parcel)" and proposes that the lien "attaches to proceeds; proceeds held." Mot. at 11. The Debtors' Support Agreement likewise acknowledges that Claim 6 includes "a judgment lien." Plan Support and Subordination Agreement ("Support Agreement"), Recital D, Dkt. 189, Ex. 4.

**B. The Sale and the Competing Offers**

The Debtors propose to sell both the Fu Bang Parcel and DLC2's adjacent undeveloped parcel to Real Estate Income Fund I LLC ("REIF") for $20,750,000, by private sale and not subject to overbid. Mot. at 2–3. The Debtors propose to allocate the price between the two parcels later, "as part of the Debtors' plan process." Mot. at 12; Rubin Decl. ¶ 22. FCB holds deeds of trust on both parcels; the Lu Lienholders' lien encumbers only the Fu Bang Parcel. Mot. at 11–12. Fu Bang previously valued the Fu Bang Parcel alone at $24,000,000. Dkt. 25, Sched. A/B, line 55.1.

According to the Debtors' declarations, Blue Spring Assets LLC's predecessor first offered $23,100,000 with financing contingencies. Mot. at 13; Rubin Decl. ¶ 11. On September 28, 2026, Blue Spring offered $22,000,000 with no contingencies and a $300,000 non-refundable deposit. Mot. at 14; Rubin Decl. ¶ 16. REIF's deposit is also $300,000, and if REIF fails to close, the Debtors' "sole and exclusive remedy" is to keep this deposit. Declaration of Bernardo D. Cardoso II in Support of Motion (hereinafter, the "Cardoso Decl."), Ex. 1 (Purchase and Sale Agreement) § 8(c) [Dkt. 189]. REIF will fund the price from the deposit and other cash "totaling approximately $1,000,000," with the balance from equity and from debt financing that a private equity fund has "conditionally approved." Cardoso Decl. ¶ 10. REIF made its offer "on

---

A copy of each is attached hereto as Ex. B and C, respectively.

the condition that it would not be exposed to overbids or an auction." *Id.* ¶ 7. The Debtors concede they cannot make the certification LBR 6004-1(c)(2)(B) requires for a sale without overbid, because Blue Spring contacted them after the PSA was signed. Mot. at 24. Earlier, "at the direction of Bo Don," the Debtors declined to name a stalking horse, and Citivest then left the process. Mot. at 14; Rubin Decl. ¶ 18.

### C. The Buyer's Affiliates, the Support Agreement, and the Backstop

On October 14, 2026, the day before the Motion was filed, REIF's affiliate, Real Estate Income Fund III LLC ("REIF III"), acquired 100% of Dos Lagos Regional Center, LLC ("DLRC"), the general partner of the five EB-5 partnerships holding $33,653,750 in scheduled claims, from "Bo Chen (also known as Bo Don)," Fu Bang's chief executive officer, for $1.00. Declaration of Brad J. Domitrovitsch in Support of Motion (hereinafter the "Domitrovitsch Decl.") ¶¶ 4–5; October MIPA §§ 2.01, 3.01. Ms. Chen and DLRC are themselves judgment debtors on the Lu Lienholders' judgment. Ex. C, items 16, 18. The MIPA treats "the judgment entered March 29, 2023 in Riverside Superior Court Case No. CVRI2104945" as a "Pre-Closing Liability" that Ms. Chen keeps and indemnifies. If the sale fails or does not close by March 31, 2027, REIF III may hand DLRC back to Ms. Chen for $1.00. October MIPA §§ 2.03, 11.16.

The same day, REIF III caused DLRC to sign the Support Agreement for all five partnerships, without limited-partner consent, after DLRC "considered" the partnership agreements' affiliate-transaction clause because the counterparty's affiliate is the buyer. Domitrovitsch Decl. ¶¶ 8, 10–11. The Support Agreement defines Claim 6, "including any judgment lien," as a "Related EB-5 Claim"; excludes it from the investor elections and the backstop; and reserves the Debtors' rights "to seek its subordination under section 510(b)" and to object to it "as duplicative of a Partnership Claim." Support Agreement §§ 1, 3(b), 6(a)(ii).

Somewhat surprisingly, in the same document, the Debtors promise not to seek § 510(b) subordination of any other investor's share of the partnership claims. *Id.* § 4(d). Of course, if the Debtors' argument is that the Lu Lienholders' claim should be subordinated under Bankruptcy Code Section 510(b) as deriving from a "security" of a Debtor or its "affiliate," there is no plausible argument that every other EB-5 investor's share of the partnership claims should not

be mandatorily identically subordinated. The Lu Lienholders submit that there is no legal basis for such subordination regardless. Of course that is a matter for the Court to decide at a future day if asked to do so, but there should be no confusion that the Debtors are selectively deploying Section 510(b) against only the Lu Lienholders, while promising other investors protection from its reach so long as they support the $20.75 million REIF offer.

## II. ARGUMENT

### A. The Sale Should Be Approved Without Any Assumption (Or Finding) That the Lu Lienholders' Lien Will Be Subordinated.

Nothing about the transaction requires subordinating the Lu Lienholders' lien or even a finding or assumption that the Lu Lienholders' lien will be subordinated at some point in the future. A sale can be approved without any contemplation of lien subordination. The Debtors propose to pay only the taxes, FCB, and Sparknest at closing and to hold everything else with liens attaching to the proceeds in their current priority. Mot. at 11. That is perfectly acceptable to the Lu Lienholders so long as the Debtors are not representing to the court or other creditors that the Lu Lienholders' lien will be subordinated. The Debtors have no basis to make that representation or assumption and the sale is in no way contingent on such representation or assumption.

The PSA confirms that nothing more is needed. REIF's "single condition precedent" is an order selling the Property free and clear "to the extent permitted by section 363(f)." PSA §§ 3(a)–(b). The PSA does not require approval of the Support Agreement or the Backstop Commitment, and it does not mention Claim 6. REIF pays "all closing costs," and the Debtors pay none. PSA § 6(d); Cardoso Decl. ¶ 12. An order that attaches the lien to the proceeds in its existing priority gives REIF everything it bargained for.

The Backstop Commitment itself says it "does not . . . alter the priority of any claim." Backstop Commitment § 3. Any order approving either document should say the same, and should state that the Support Agreement has no effect on Claim 6 or the lien securing it.

Finally, the Lu Lienholders note that the "Benchmark Recovery" at the crux of the Backstop Commitment is what each Backstopped Claim would have received "had the Property

been sold for $22,000,000," "holding constant all Allowed claims, Elections, administrative expenses, priorities, liens, and other facts." Support Agreement § 1. However, as it stands today, the Lu Lienholders' lien would absorb essentially all of the extra $1,250,000 from the Fu Bang Parcel, because Claim 6 is under-secured at either price. *See infra* Part II.B. As to Fu Bang's estate, then, the Backstop delivers value to unsecured creditors *only if Claim 6/the Lu Lienholders' lien is first subordinated*, which is what the CRO "expect[s]." Rubin Decl. ¶ 33. The Court should not adopt that assumption in a sale order.

**B. Rejecting the $22,000,000 Offer Is Not a Sound Business Judgment as to the Creditor Who Bears the Cost of Accepting the Lower Offer.**

A sale under § 363(b) requires an articulated business justification, *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19–20 (B.A.P. 9th Cir. 1988), and a showing that the sale is proposed in good faith, *240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners, Ltd.)*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); and the Court's obligation is "to assure that optimal value is realized by the estate under the circumstances." *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288–89 (B.A.P. 9th Cir. 2005); Mot. at 20. In *Lahijani*, the Panel reversed a sale order of avoidance claims, noting that the trustee had not properly valued a competing offer and that there was "good reason to think" the approved buyer "was not actually the high bidder." *Lahijani*, 325 B.R. at 290. When competition is constrained, "the price is less likely to be reliable and should be examined more carefully." *Id.* at 289. Price objections "are often resolved by the court ordering an auction," *id.* at 287. Courts also consider whether the price is fair and reasonable and whether the property was adequately marketed. *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991).

On the Debtors' own figures, the effect of the lower price falls on Claim 6:

| | **REIF ($20.75M)** | **Blue Spring ($22.0M)** |
|---|---:|---:|
| Taxes, FCB, Sparknest (asserted) | ($15,049,410) | ($15,049,410) |
| Available for Claim 6 lien | $5,700,590 | $6,950,590 |
| Claim 6 shortfall ($7,061,488) | ($1,360,898) | ($110,898) |

Mot. at 11 (asserted amounts, using FCB's $11,051,051.17 claim once); figures before any priority dispute with SZ Properties LLC and US Discount Center Corp and before accruals.

The Debtors offer three primary reasons to accept the lower offer from REIF here. First, the Debtors argue that the REIF sale comes with more certainty. Mot. at 22; Rubin Decl. ¶ 26. However, on the record available, it appears that the Debtors concede that the Blue Spring offer of $22,000,000 was purportedly sent to the Debtors with *no contingencies*. Mot. at 14. ("On September 28, 2026, Blue Spring's broker sent an email stating that Blue Spring would purchase for $22,000,000 with no contingencies, a $300,000 non-refundable deposit, and closing on the timeline approved or ordered by the Court…"). If REIF does not close, the estate's "sole and exclusive remedy" is the $300,000 deposit (PSA § 8(c)), the same non-refundable amount Blue Spring offered. There is no basis on this record, other than the fact that REIF has already signed a PSA, to believe that the Blue Spring offer is less certain than the REIF offer, given that the broker for Blue Spring stated that the offer would come with "no contingencies" *and* on the same timeline approved or ordered by this Bankruptcy Court. The Debtors' argument that the REIF offer of $1.25 million less is justified on a certainty basis is unconvincing.

Second, REIF will not tolerate an auction: a buyer's refusal to be overbid is a reason for scrutiny, not deference, where the Debtors cannot make the certification LBR 6004-1(c)(2)(B) requires. Mot. at 24. It is of course only logical that permitting overbids often leads to higher prices for assets, as courts in this jurisdiction have noted. *See, e.g., Goodwin v. Mickey Thompson Ent. Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*, 292 B.R. 415, 422 (B.A.P. 9th Cir. 2003) ("Moreover, entertaining overbids often triggers a bidding sequence that may lead to a much higher price. In short, the court's findings do not support its conclusion.").

Third, the Backstop: it specifically is intended to *exclude* the Lu Lienholders and its value is premised necessarily on subordination of the Lu Lienholders' Lien. Mot. at 18, 23. The CRO's conclusion that the gap does not matter rests on his expectation that the Lu Lienholders' lien will be subordinated. Rubin Decl. ¶¶ 29, 33. A business judgment that depends on predicting the outcome of litigation not yet filed that gives effectively illusory value to general unsecured creditors should be heavily scrutinized. On the facts as they are today, with the Lu Lienholders'

lien attaching to the sale proceeds, the Backstop Agreement provides absolutely no value to general unsecured creditors, who are effectively out of the money under either proposed sale.

Nor does the November 16, 2026 outside date leave no time to fix this. That date may be extended "by mutual written agreement." *See* PSA § 8(a)(iii). REIF has already waived one PSA deadline. Cardoso Decl. ¶ 4. REIF intends to close "on or before December 31, 2026." *Id.* ¶ 11. Finally, the Support Agreement and the MIPA run to January 31 and March 31, 2027. Support Agreement § 2(b); October MIPA § 11.16.

The Court has several ways to fix this without losing the sale: (a) require that Blue Spring and any other qualified bidder be allowed to submit a binding, fully documented overbid by a date certain; (b) require REIF to increase its price to $22,000,000, instead of providing the backstop that specifically targets the Lu Lienholders and will only provide value if the Lu Lienholders are subordinated; or (c) extend the Backstop Commitment to Claim 6 so that the Lu Lienholders also receive at least the distribution a $22,000,000 sale would have produced, calculated with their lien in its existing priority.

### C. The Debtors' § 510(b) Theory Is Not a Ground for Any Sale-Order Relief, and It Fails on Its Face.

The Debtors say they are "commencing an adversary proceeding" to subordinate Claim 6 under § 510(b) and call that a bona fide dispute under § 363(f)(4). Mot. at 26. Their own authority defines a bona fide dispute as one "as to the validity of the debt." Mot. at 25 (quoting *Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624, 627 (B.A.P. 8th Cir. 2004)). The Debtors do not dispute the validity of the judgment or the lien. In any event, a dispute under § 363(f)(4) permits a sale while the dispute is litigated; it does not resolve it. Any determination of the priority or extent of the lien, or subordination of the claim, requires an adversary proceeding. Fed. R. Bankr. P. 7001(b), (h). The Lu Lienholders reserve all rights and legal arguments with respect to the adversary proceeding, but submit that the Debtors will not be able to satisfy Section 510(b) statutory requirement that the claims arose from the purchase of a "security" of a "debtor" or "an affiliate of the debtor." 11 U.S.C. § 510(b).

**D. The Price Allocation Between Parcels Must Be Decided on Notice, Before Any Distribution.**

FCB, the senior lienholder, is secured by both parcels; the Lu Lienholders' lien reaches only the Fu Bang Parcel. Mot. at 11–12. How the proposed $20,750,000 sale price is allocated between parcels, and which parcel's proceeds bear the FCB payoff, will directly determine the Lu Lienholders' recovery. The Debtors propose to decide allocation later "as part of the Debtors' plan process." Mot. at 12; Rubin Decl. ¶ 22. The sale order should provide that no allocation is made, and that the FCB payment is not charged against Fu Bang Parcel proceeds in a way that reduces the funds held for Claim 6, except by further order after notice and a hearing at which the Lu Lienholders may be heard. The Lu Lienholders reserve their rights under Cal. Civ. Code § 2899, which requires a senior lienholder with a lien on several properties to resort first to the property on which it holds an exclusive lien.

**E. Administrative Insolvency, If Asserted, Is Not a Ground to Take the Lien Creditors' Collateral.**

The Debtors may argue that, unless Claim 6 is subordinated, the estates cannot pay their administrative expenses. That is not a basis for any relief against the Lu Lienholders. The Bankruptcy Code allows a lienholder's collateral to bear estate expenses in only one way: a surcharge under § 506(c) for "the reasonable, necessary costs and expenses of preserving, or disposing of," the collateral "to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). Only the trustee, or a debtor in possession, may seek that relief, *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6–7 (2000), and the proponent bears the burden of proving each element as to the specific expense. *Central Bank of Montana v. Cascade Hydraulics & Util. Serv., Inc. (In re Cascade Hydraulics & Util. Serv., Inc.)*, 815 F.2d 546, 548 (9th Cir. 1987). No surcharge has been requested; there are no costs of sale to surcharge, because REIF pays them all (PSA § 6(d)). The general costs of administering these cases would not qualify and the Debtors cannot reach the same result by relabeling a surcharge as a "subordination." If administrative solvency depends on value that belongs to the Lu Lienholders, the answer is a carve-out negotiated with them, which they are willing to discuss, or the remedies

Congress provided, 11 U.S.C. §§ 1112(b)(4)(A), 1129(a)(9)(A).

Nor can the Court's equitable powers fill the gap. Section 105(a) does not authorize relief that the Code's specific provisions withhold. *Law v. Siegel*, 571 U.S. 415, 421 (2014). And a distribution that departs from the priority scheme without the affected creditor's consent cannot be approved because it would make a case administrable. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464–65 (2017) (rejecting a structured dismissal that paid junior creditors ahead of senior ones in a case otherwise headed for conversion).

**F. The Record Does Not Support a § 363(m) Finding or Waiver of the Stay.**

Good faith turns on the integrity of the purchaser's conduct, and is lacking where there is "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986). The declarations raise more questions than they answer. The buyer's principal has known the Debtors' CEO since before the petition date. Cardoso Decl. ¶ 5. The CEO, herself a judgment debtor to the Lu Lienholders, not the CRO, signed the PSA (PSA, signature page), directed that no stalking horse be named, after which a competing bidder withdrew (Mot. at 14; Rubin Decl. ¶ 18), and sold the EB-5 partnerships' general partner to the REIF affiliate for $1.00 the day before the Motion to ensure sale support from the EB-5 partnerships (October MIPA §§ 3.01, 4.01). That affiliate then caused the partnerships, the largest unsecured creditor group, to sign plan support, separate classification, and releases of the REIF buyer. Domitrovitsch Decl. ¶¶ 8–11; Support Agreement §§ 3–5. While the Lu Lienholders do not submit that these facts alone establish that the sale does not satisfy a good faith requirement, they do indicate that an auction or permission to overbid is appropriate to ensure the Debtors are maximizing the estate's value.

The Court should also deny the requested waiver of the 14-day stays under Fed. R. Bankr. P. Rules 6004(h) and 6006(d). Mot. at 29–30. No urgency requires it: REIF intends to close by December 31, 2026, and is prepared to close sooner only "if the Court waives the stays." Cardoso Decl. ¶ 11. At a minimum, if any aspect of this Limited Objection is overruled, the

stays should be extended to the time necessary for any objecting party to seek a stay pending appeal, as the Debtors note in their Motion. Mot. at 30.

## III. REQUESTS AND CONCLUSION

The Lu Lienholders request that the Court condition approval of the Motion on entry of a Sale Order providing that:

1. The Lu Lienholders' judgment lien attaches to the net proceeds of the Fu Bang Parcel with the same validity, extent, and priority it held against the Property immediately before closing;
2. Not less than the full amount of Claim 6, $7,061,487.67 plus accruing post-judgment interest, or all remaining Fu Bang Parcel proceeds if less, is held in a segregated, interest-bearing account and is not used for any purpose, including administrative expenses, any surcharge under 11 U.S.C. § 506(c), or the Backstop Commitment, absent further order after notice to the Lu Lienholders, and no carve-out from those proceeds for administrative expenses is made without their written consent;
3. Nothing in the Sale Order, the Support Agreement, or the Backstop Commitment approves, finds, or presumes the subordination, classification, or treatment of Claim 6 or its lien, or finds that Claim 6 arises from a security of the Debtors or of an affiliate, or that DLRC or any partnership is an affiliate of the Debtors; all such questions are reserved for an adversary proceeding or plan confirmation; and the Support Agreement is approved only as binding on its signatories with no determination, finding or representation that the Lu Lienholders' lien will be subordinated;
4. Nothing in the Sale Order, the Support Agreement, or the Backstop Commitment releases, enjoins, or impairs any claim or judgment right of the Lu Lienholders against any person, including DLRC and Bo Chen (also known as Bo Don), and no election or release is solicited from any Lu Lienholders with respect to Claim 6;

5. No allocation of the Purchase Price between parcels, and no charge of the FCB payment against Fu Bang Parcel proceeds that reduces the amount held for Claim 6, is made except by further order after notice and a hearing;

6. Qualified bidders, including Blue Spring, may submit binding overbids by a deadline the Court sets, or REIF may agree to increase its purchase price to $22,000,000, or the Backstop Commitment is extended to Claim 6.

7. The Court grants such further relief as is just.

Dated: October 22, 2026

Respectfully submitted,

REID & WISE, LLC

By: /s/ SIYAO LIN

SIYAO LIN (State Bar No. 355138)
slin@reidwise.com
MATTHEW J. LIVINGSTON (Admitted Pro Hac Vice)
mlivingston@reidwise.com

REID & WISE, LLC
One Penn Plaza, Suite 2015
New York, NY 10119

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Reid & Wise, LLC, One Penn Plaza, Suite 2015
New York, NY 10119

A true and correct copy of the foregoing document entitled (*specify*): LIMITED OBJECTION AND RESERVATION OF RIGHTS OF JUDGMENT LIENHOLDERS MINGXIA LU, ET AL. (CLAIM NO. 6) TO DEBTORS' MOTION TO SELL REAL PROPERTYTO REAL ESTATE INCOME FUND I LLC AND R MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/22/2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached NEF service list

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _______________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/22/2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott Yun (via Personal Delivery)
United States Bankruptcy Court
3420 Twelfth St., Suite 345
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/22/2026 | Siyao Lin | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**In re Fu Bang Group Corp, USA and Dos Lagos Center 2, LLC (Jointly Administered)**
**Lead Case No. 6:25-bk-13004-SY**

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

• Attorneys for Debtors Fu Bang Group Corp (USA) and Dos Lagos Center 2, LLC: **Derrick Talerico, Paige T. Rolfe**: dtalerico@wztslaw.com; prolfe@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com; admin@wztslaw.com

• Attorneys for Defendants Central Trading Corp., RDD Freight International (LA) Inc., SZ Properties LLC, Sierra Home Material Trade Inc., U.S. Discount Center Corp. and Lang Zhang: **Paul A Beck**: pab@pablaw.org;raychael@pablaw.org

• Attorneys for Creditor Sparknest, LLC, a Delaware limited liability company: **David B Golubchik**: dbg@lnbyg.com

• Attorneys for Creditors Cheukhing Lau, Cong Liu, Dabao Guan, Guangquan Liang, Haifeng Zhang, Haochang Huant, Lijuan Ye, Lin Li, Mingxia Lu, Saiying Xiao, and Yiyi Liang: **Siyao Lin**: lin.silvacy@gmail.com

• Attorneys for Creditor First Credit Bank and Attorney Dennette A Mulvaney: **Dennette A Mulvaney**: dmulvaney@leechtishman.com; lmoya@leechtishman.com; narango@leechtishman.com; dbender@leechtishman.com

• Attorneys for Creditor Na Jiang: **Jeffrey S Shinbrot**: jeffrey@shinbrotfirm.com; sandra@shinbrotfirm.com; tanya@shinbrotfirm.com

• Interested Party/Courtesy NEF: **Xinyuan Zhang**: echozhang@shanzepartners.com; leowang@shanzepartners.com; siyunli@shanzepartners.com

• On behalf of the U.S. Trustee (RS): **Abram Feuerstein, Ali Matin**: abram.s.feuerstein@usdoj.gov; ali.matin@usdoj.gov

• US Trustee's Office (RS): ustpregion16.rs.ecf@usdoj.gov